973 F.2d 1284
 Sidney E. TAYLOR; Taylor Tool & Die Manufacturing, Inc., a
Michigan corporation; and Taylor Investment,
Inc., a Michigan corporation,
Plaintiffs-Appellants,
v.
FIRST OF AMERICA BANK-WAYNE, a National Banking corporation;
First of America Bank-Southeast Michigan, N.A., a National
Banking corporation; John Dawson; George Schuster; Cyb
Tool & Die, a Michigan corporation; Frederick Cyb; Mark
IV, Inc., a Michigan corporation; Ronald Cyb; Dennis E.
Wertheimer & Associates, Ltd., a Michigan corporation; and
Dennis E. Wertheimer, jointly and severally, Defendants-Appellees.
 No. 91-2134.
 United States Court of Appeals,
Sixth Circuit.
 Argued May 5, 1992.
Decided Aug. 28, 1992.
Rehearing and Rehearing En Banc
Denied Oct. 20, 1992.
 
 Lawrence C. Atorthy (briefed), Kenneth B. Morgan (argued and briefed), Seyburn, Kahn, Ginn, Bess & Howard, Southfield, Mich., for plaintiffs-appellants.
 Gregory M. Kopacz (argued), Michael P. Cooney (briefed), Dykema & Gossett, Detroit, Mich., Bruce T. Wallace (briefed), Hooper, Hathaway, Price, Beuche & Wallace, Ann Arbor, Mich., James E. Romzek (argued), Michael A. Nedelman (briefed), Nedelman, Romzek, Smith & Frank, Southfield, Mich., for defendants-appellees.
 Before: GUY, BOGGS, and SILER, Circuit Judges.
 SILER, Circuit Judge.
 
 
 1
 This lender liability action arises from the unsuccessful attempt of Sidney E. Taylor ("Sidney"), through Taylor Tool & Die Manufacturing, Inc., and Taylor Investment, Inc. (collectively "Taylor Companies"), to purchase Cyb Tool & Die, Inc., and Mark IV, Inc. (collectively "Cyb Companies"). The issues are whether the district court properly: (1) denied plaintiffs' motion to remand; (2) granted the FOA Defendants' (hereinafter defined) motion to dismiss or, in the alternative, for summary judgment; and (3) granted the Accounting Firm's (hereinafter defined) motion to dismiss for lack of jurisdiction. For the following reasons, we AFFIRM.
 
 I. PROCEDURE
 
 2
 Plaintiffs filed this action in state court, alleging, inter alia, a claim under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 et seq. As plaintiffs' ECOA claim provided federal jurisdiction under 28 U.S.C. § 1331, this action was removed to the United States District Court, Eastern District of Michigan.
 
 
 3
 Plaintiffs' amended complaint alleges the following claims: Count 1--promissory estoppel against First of America Bank-Wayne ("FOA-Wayne") and John Dawson ("Dawson"), an FOA-Wayne employee; Count 2--contract breach against FOA-Wayne and First of America Bank-Southeast Michigan ("FOA-SEM"); Count 3--contract breach against Frederick Cyb ("Frederick") and Ronald Cyb ("Ronald") (collectively "Cybs"), the Cyb Companies' owners; Count 4--tortious interference with advantageous business relationships against the Cyb Companies; Count 5--accounting malpractice against Dennis E. Wertheimer & Associates ("Accounting Firm"), the accounting firm retained by the Cybs, Cyb Companies, and plaintiffs; Count 6--fiduciary duty breach against the Accounting Firm; and Count 7--negligence against FOA-Wayne, FOA-SEM, George Schuster, an FOA-SEM employee, and Dawson (collectively "FOA Defendants"). The district court denied plaintiffs' motion to remand, granted the FOA Defendants' summary judgment motion, and dismissed the remaining claims against the Cybs, Cyb Companies, and Accounting Firm ("New Defendants"), without prejudice.
 
 II. FACTS
 
 4
 On August 3, 1988, the Taylor Companies executed a revised non-binding letter of intent to purchase the Cyb Companies for $3,100,000. To meet the purchase price, plaintiffs initially sought $3,050,000 as follows: (1) $200,000 from Motor Enterprises, Inc. ("MEI"); (2) $500,000 from the Michigan Strategic Fund, Inc. ("MSF"); (3) $1,074,000 from the sellers, and (4) $1,276,000 from FOA-Wayne. At the outset, Dawson advised plaintiffs that: (1) FOA-Wayne would not loan plaintiffs more than $950,000, its legal lending limit; (2) the remaining $326,000 would have to come from an FOA affiliate; and (3) it could be secured through a FOA affiliate without any problem.
 
 
 5
 On August 4, 1988, FOA-Wayne approved a $950,000 loan to plaintiffs. It advised plaintiffs of the loan approval by an August 11, 1988, letter, stating that it required an executed purchase agreement and financial information before it closed the loan. Later in August, 1988, it advised plaintiffs that it needed a final purchase agreement and current financial information before it could seek participation from an affiliate and that it would take a certain amount of time, after receiving this information, to prepare and finalize the closing documents.
 
 
 6
 In late September or early October, 1988, MSF committed to loan plaintiffs $500,000, with the following conditions precedent to closing: (1) plaintiffs were required to submit a fully executed purchase agreement and updated financial information to MSF and inform it of all aspects of the transaction; (2) the Cyb Companies were required to show a ratio of current assets to liabilities of not less than 100 percent; and (3) there could be no material deterioration in the Cyb Companies' financial condition.
 
 
 7
 In early October, 1988, Dawson requested FOA-SEM's participation in the proposed transaction. On October 17, 1988, MEI committed to loan plaintiffs $200,000. On October 25, 1988, the Cyb and Taylor Companies executed a non-final purchase agreement. FOA-Wayne, MSF, and MEI were advised that the October 25, 1988, purchase agreement was not final. By November 15, 1988, FOA-SEM had requested that plaintiffs provide it with updated financial statements and projections.
 
 
 8
 In November, 1988, plaintiffs determined they needed additional capital to operate the Cyb Companies after closing. Therefore, plaintiffs requested an additional $250,000 of working capital or a total of $1,526,000 from FOA-Wayne and FOA-SEM.
 
 
 9
 By December 15, 1988, the Cybs had withdrawn or otherwise paid themselves more than $540,000 from the Cyb Companies. On December 22, 1988, plaintiffs submitted the requested financial information to FOA-SEM. On January 16, 1989, the Cyb and Taylor Companies executed a final purchase agreement. On approximately February 6, 1989, FOA-SEM declined to make the $650,000 participation loan to plaintiffs, citing high leverage, inadequate cash flow, and Sidney's inexperience as the bases for its decision. On March 7, 1989, FOA-SEM offered plaintiffs revised financing in the form of a $300,000 line of credit and a $375,000 commercial loan, conditioned upon a purchase price reduction, subordination of some debt, and compliance with an environmental audit.
 
 
 10
 On April 21, 1989, MSF received the Cyb Companies' financial statements for the period ending December 31, 1988. These financial statements showed a severe deterioration in the Cyb Companies' financial condition due to the Cybs' $540,000 withdrawal from the Cyb Companies. On April 24, 1989, the Cyb and Taylor Companies executed a revised purchase agreement and scheduled closing for April 27, 1989. On May 4, 1989, MSF rescinded its $500,000 loan commitment due to plaintiffs' failure to meet its commitment letter's requirements. As the proposed purchase could not be closed without MSF's participation, the Cyb Companies terminated the revised purchase agreement on May 4, 1989.
 
 III. ANALYSIS
 
 11
 A. Plaintiffs' Motion to Remand.
 
 
 12
 Generally, "if the federal claims are dismissed before trial, ... the state claims should be dismissed as well." United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1136, 16 L.Ed.2d 218 (1966); see also Gaff v. Federal Deposit Ins. Corp., 814 F.2d 311, 319 (6th Cir.1987) (where sole federal claim is dismissed under Fed.R.Civ.P. 12(b)(6), remaining pendent state claims should be remanded to state court). However, there is no mandatory rule. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988); Rosado v. Wyman, 397 U.S. 397, 403-05, 90 S.Ct. 1207, 1213-14, 25 L.Ed.2d 442 (1970). Gibbs "simply recognizes that" when "all federal claims are eliminated before trial, the balance of factors ... under the pendent jurisdiction doctrine ... will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon, 484 U.S. at 350 n. 7, 108 S.Ct. at 619 n. 7.
 
 
 13
 "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right." Baer v. R & F Coal Co., 782 F.2d 600, 603 (6th Cir.1986) (quoting Gibbs, 383 U.S. at 726, 86 S.Ct. at 1139); Roberts v. Troy, 773 F.2d 720, 726 (6th Cir.1985). "[T]rial courts do possess some discretion to decide a pendent state law claim once the federal basis for jurisdiction is dismissed. A trial court must balance the interests ... when deciding whether to resolve a pendent state claim on the merits." Aschinger v. Columbus Showcase Co., 934 F.2d 1402, 1412 (6th Cir.1991) (quoting Province v. Cleveland Press Publishing Co., 787 F.2d 1047, 1055 (6th Cir.1986)).
 
 
 14
 Here, the interests of judicial economy and fairness both favored the district court's retention of jurisdiction. First, this case had been on the district court's docket for almost two years. Second, the parties had completed discovery and compiled a voluminous record. Third, plaintiffs' federal claim was not abandoned until the filing of the amended complaint. Fourth, an extensively briefed summary judgment motion was ripe for a ruling by the district court. Thus, as remand could have wasted judicial resources and resulted in additional delay, the district court's discretion was not abused in denying the motion to remand.
 
 
 15
 B. FOA Defendants' Summary Judgment Motion.
 
 
 16
 1. Promissory Estoppel Claim Against FOA-Wayne and Dawson.
 
 
 17
 Even if plaintiffs had demonstrated a clear and definite promise inducing reliance, the district court correctly concluded that plaintiffs could not meet the fourth promissory estoppel element: enforcement of the promise must be necessary to avoid injustice. See McMath v. Ford Motor Co., 77 Mich.App. 721, 259 N.W.2d 140, 142 (1977). The proposed transaction failed due to the independent violations of the MSF loan covenants, not any action by FOA-Wayne or Dawson. In fact, FOA-Wayne had not revoked its loan commitment on May 4, 1989, the date MSF rescinded its $500,000 loan commitment due to plaintiffs' failure to meet its commitment letter's requirements. As the district court concluded, no evidence indicates that Dawson's failure to secure FOA-SEM's prompt participation affected the proposed transactions. Thus, whatever the promise or reliance, enforcement of the promise is not necessary to avoid an injustice.
 
 
 18
 2. Contract Breach Claim Against FOA-Wayne and FOA-SEM.
 
 
 19
 Assuming, arguendo, that FOA-Wayne and FOA-SEM owed plaintiffs a duty of good faith, a fact finder could not reasonably conclude that they breached that duty. No evidence indicates that FOA-Wayne and/or FOA-SEM's actions were taken in bad faith.
 
 
 20
 Moreover, even assuming that FOA-Wayne and FOA-SEM acted in bad faith, their actions did not result in any damages to plaintiffs. As discussed in Subsections B(1) and C, independent of the FOA Defendants' conduct, the Cyb and Taylor Companies could not have closed the deal on any date after January 16, 1989, when they first executed a final purchase agreement.
 
 
 21
 3. Negligence Claim Against The FOA Defendants.
 
 
 22
 A central component of the district court's rulings was the absence of the requisite causal connection between the FOA Defendants' alleged unlawful conduct and plaintiffs' injury.
 
 
 23
 Although ... causation is often stated in terms of foreseeability, ... whether there is proximate causation ... is essentially a [legal] problem.... When a number of factors contribute to producing injury, one actor's negligence will not be considered a proximate cause of the harm unless it was a substantial factor in bringing about the injury.
 
 
 24
 Poe v. Detroit, 179 Mich.App. 564, 446 N.W.2d 523, 529 (1989); see also Brisboy v. Fibreboard Corp., 429 Mich. 540, 418 N.W.2d 650, 653 (1988) (" 'substantial factor' test of legal causation").
 
 
 25
 The Cyb and Taylor Companies first executed a final purchase agreement on January 16, 1989. By that date, the Cyb Companies' financial condition had deteriorated due to the Cybs' withdrawal of $540,000 from the Cyb Companies on or before December 15, 1988. Thereafter, the MSF loan commitment's conditions precedent no longer and never again existed. MSF required current financial statements showing compliance with its asset to liability ratio and no material adverse change covenants.
 
 
 26
 Independent of the FOA Defendants' conduct, the Cyb and Taylor Companies could not have closed the deal after January 16, 1989, when they first executed a final purchase agreement. The transaction failed when MSF rescinded its loan commitment due to the Cyb Companies' deterioration. Thus, as the Cybs' pre-January 16, 1989, withdrawal of $540,000 from the Cyb Companies, not the FOA Defendants' action, proximately caused the transactions' failure, plaintiffs failed to establish a prima facie case.
 
 
 27
 C. The Accounting Firm's Motion to Dismiss.
 
 
 28
 After plaintiffs filed the amended complaint, which did not contain a federal claim, the Accounting Firm moved the district court to dismiss it for lack of subject matter jurisdiction. The district court concluded that there was no basis for federal jurisdiction over the New Defendants, as they were not proper pendent parties. See Aldinger v. Howard, 427 U.S. 1, 16-19, 96 S.Ct. 2413, 2421-22, 49 L.Ed.2d 276 (1976). In addition, as the compelling reasons for exercising jurisdiction over the state claims against the FOA Defendants did not apply to the New Defendants, the district court indicated that it would not exercise any discretion it might have to assert jurisdiction over the state claims against the New Defendants.
 
 
 29
 Plaintiffs argue that the district court should have asserted jurisdiction over the state claims against all of the defendants or remanded them all to the state court. However, several grounds support the district court's decision to dismiss the state claims against the New Defendants, without prejudice. First, unlike plaintiffs and the FOA Defendants, plaintiffs and the New Defendants had not expended significant time and resources litigating their dispute in federal court. Second, as the district court held, the New Defendants were not proper pendent parties. See Stallworth v. Cleveland, 893 F.2d 830, 836-38 (6th Cir.1990). Finally, as plaintiffs first pled their state claims against the New Defendants in their federal amended complaint, i.e., plaintiffs' state claims against the New Defendants were not removed from state court, the district court could not remand them to state court. Carnegie-Mellon Univ., 484 U.S. at 351, 108 S.Ct. at 619 (Where plaintiff filed federal suit, "remand was not an option.").
 
 
 30
 For these reasons, we AFFIRM the district court's judgment.
 
 
 31
 RALPH B. GUY, Jr., Circuit Judge, concurring in part and dissenting in part.
 
 
 32
 I concur in the majority's affirmance of the dismissal of the claims against the Cyb and accounting defendants.[1] However, I respectfully dissent from the majority's affirmance of the district court's decision to retain jurisdiction over the claims against the FOA defendants.
 
 
 33
 The district court retained jurisdiction over Taylor's pendent state law claims for more than three months after he withdrew the claim that was the sole basis of federal jurisdiction. By the time Taylor withdrew his federal claim, the case had been on the docket for more than 18 months but had not proceeded beyond discovery. Since our precedents and the principles of federalism require that pendent state law claims be dismissed or remanded when the federal claims are dismissed before trial unless "overwhelming" interests in judicial economy are implicated, I would reverse the district court's grant of summary judgment and remand the claims against the FOA defendants to state court.
 
 
 34
 The general rule is that a district court should dismiss pendent state law claims if the federal claims have been dismissed before trial. Gaff v. Federal Deposit Ins. Corp., 814 F.2d 311, 319 (6th Cir.1987); see also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988) (recognizing that, in such cases, the balance of interests will usually point toward declining to exercise jurisdiction). However, we have stated that "overwhelming" interests in judicial economy could justify a district court's decision to retain pendent claims after the federal claims have been dismissed. Aschinger v. Columbus Showcase Co., 934 F.2d 1402, 1412-13 (6th Cir.1991); see also Sarin v. Samaritan Health Ctr., 813 F.2d 755, 759 n. 5 (6th Cir.1987); Province v. Cleveland Press Publishing Co., 787 F.2d 1047, 1054-55 (6th Cir.1986).[2]
 
 
 35
 In Province, we upheld the district court's decision to reach the merits of the state law claims because discovery had closed, a substantial amount of resources had been expended, the predicate factual findings for the federal and state claims were similar, and no "abstruse" state law doctrine was implicated. 787 F.2d at 1055 & n. 11. Similarly, in Aschinger, we found that the similarity of the state and federal claims and the expenditure of time and resources justified the district court's decision to retain jurisdiction. 934 F.2d at 1413. In Gaff, we held that the district court abused its discretion by retaining pendent jurisdiction after finding that the plaintiffs lacked standing to pursue their federal claim. 814 F.2d at 319.
 
 
 36
 In these cases, we weighed several factors in order to determine whether an "overwhelming" interest in judicial economy justified a decision to retain jurisdiction: (1) the similarity of the predicate factual findings necessary to resolve the state and federal claims, Aschinger, 934 F.2d at 1412; (2) the amount of resources and time that have been expended, id.; (3) the need to avoid duplicative litigation, Province, 787 F.2d at 1054; and (4) the difficulty or novelty of the state law issues, id. at 1055 n. 11.
 
 
 37
 Turning to the first factor to be weighed, there is substantial overlap in the predicate factual findings necessary for Taylor's state and federal claims. All of the claims against the FOA defendants required Taylor to prove that the defendants acted unreasonably in delaying credit. However, the state claims diverged substantially from the dismissed federal claim in that the latter claim required Taylor to prove that racial discrimination played a role in the defendants' actions.
 
 
 38
 As to the time and resources expended, the majority points to the fact that discovery had been completed and the case had been in federal court for over 18 months when Taylor withdrew the federal claim. However, it appears that by the time Taylor withdrew his federal claim, the court had done little other than preside over discovery. Unlike Province and Aschinger, the district court in this case did not have to consider the summary judgment motion on the merits until after Taylor had decided to withdraw the federal claim.
 
 
 39
 The need to avoid duplicative litigation weighs against retaining jurisdiction in this case. Since Taylor could not litigate his claims against the Cybs and the accounting defendants in federal court, he would have to return to state court. Taylor's claims against those defendants derive from the same set of operative facts as his state law claims against the FOA defendants. Thus, when Taylor attempted to add the Cyb and accounting defendants to his complaint and dismissed his federal claim, the court could have avoided duplicative litigation by remanding the state law claims against the FOA defendants to state court.
 
 
 40
 Finally, some of Taylor's state law claims present novel or difficult questions of Michigan law. Two of the claims present the question of whether a prospective borrower has an action in contract, or alternatively in tort, against a lender who acts unreasonably after a loan commitment is made in the absence of a final loan contract. Courts in other jurisdictions have considered this question. See, e.g., Jacques v. First Nat'l Bank, 307 Md. 527, 515 A.2d 756 (1986) (allowing tort action); Teachers Ins. and Annuity Ass'n v. Tribune Co., 670 F.Supp. 491 (S.D.N.Y.1987) (allowing contract action). However, the Michigan courts have not yet done so. Therefore, unlike Province, Taylor's action did present novel or difficult questions of state law.[3]
 
 
 41
 I conclude that the balance of factors weighs against the district court's continued exercise of pendent jurisdiction after Taylor dismissed his sole federal claim. That conclusion rests on the existence of defendants who could not be brought into federal court, the novelty of Taylor's state law claims, and, especially, the fact that the district court was not called upon to consider the merits of the pendent claims until several months after the federal claim had been withdrawn. I would reverse the district court's grant of summary judgment and remand Taylor's claims against the FOA defendants to state court.
 
 
 
 [1]
 I would emphasize, however, that this result was mandated by the fact that Taylor's action was filed before December 1, 1990. Lawsuits filed after that date must be analyzed under the "supplemental" jurisdiction statute, 28 U.S.C. § 1367, which provides for pendent party jurisdiction
 
 
 [2]
 Our statements in this area have not been uniform. Some of our recent decisions appear to state that a district court may never retain jurisdiction over pendent state law claims once the federal claims have been dismissed. See, e.g., Faughender v. City of North Olmsted, 927 F.2d 909, 917 (6th Cir.1991); Vandiver v. Hardin County Bd. of Educ., 925 F.2d 927, 935 (6th Cir.1991)
 
 
 [3]
 In reaching the merits, the majority avoids these difficult questions of state law by concluding that Taylor failed to show that the FOA defendants caused his proposed acquisition to fail. Instead, the majority concludes that the Cybs and MSF caused the deal to fall through. Taylor concedes that the Cybs and MSF contributed to the collapse, but argues that the FOA defendants' challenged conduct caused the Cybs to withdraw money from their companies, which in turn caused MSF to back out. The majority does not discuss whether Taylor's evidence is sufficient to show that the FOA defendants contributed to the collapse; instead, the majority appears to impose a requirement that Taylor prove that the challenged conduct was the ultimate cause of the collapse. Although I would express no opinion on the merits of the summary judgment, I do not agree that causation is so obviously missing from Taylor's case