UNITED STATES for Use and Benefit
of TRANS COASTAL ROOFING
COMPANY, INC., Plaintiff,

v.

DAVID BOLAND, INC., a Florida corporation, and The American Insurance Company, a foreign corporation, Defendants.

DAVID BOLAND, INC., Counterplaintiff,

v.

TRANS COASTAL ROOFING COMPANY, INC., and Intercargo Insurance Company, Counterdefendants.

No. 94–10062–CIV.

United States District Court,
S.D. Florida.

March 29, 1996.

Robert Ferencik, Jr., Ft. Lauderdale, FL, for Plaintiff.

Denis Durkin, Orlando, FL, for Defendants.

## ORDER DISMISSING CLAIMS and DE-NYING COUNTERDEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court upon Defendants' Motion for Summary Judgment, filed March 1, 1996. Plaintiff filed a response on March 18, 1996. Counterdefendant Intercargo Insurance Company ("Intercargo") filed a Motion for Partial Summary Judgment on March 6, 1996, to which Defendant/Counterplaintiff David Boland, Inc. ("Boland") responded on March 18, 1996. Intercargo's reply was received in Chambers on March 22, 1996.

The Court held oral argument on both motions at the Pretrial Conference, held March 22, 1996.

### I. Factual Background

Defendant Boland was the primary contractor on the Special Forces Training Facility project undertaken by the United States Navy at Fleming Key, Florida. On April 29, 1993, Defendant Boland entered into a subcontract with Plaintiff Trans Coastal Roofing Company, Inc. ("Trans Coastal"), pursuant to which Plaintiff would install certain roofs at the Training Facility project. Defendant

American Insurance Company ("American Insurance") was the surety under Defendant Boland's contract with the United States Navy, and provided the United States with a performance and payment bond. (Compl. ¶ 5.)

A dispute ensued when the Navy expressed dissatisfaction with the roofing material installed by Plaintiff. Upon Defendant Boland's refusal to tender payment under the subcontract, Plaintiff filed the instant suit. Count I of Plaintiff's Complaint, against the payment bond issued by Defendant American Insurance, is brought under the Miller Act, 40 U.S.C. § 270a. Count II alleges breach of contract, and is brought pursuant to the Court's supplemental jurisdiction under 28 U.S.C. § 1367.

Defendant Boland then brought a counterclaim against Plaintiff for breach of the subcontract agreement. It also sued Counterdefendant Intercargo for breach of the performance bond that Intercargo had provided for the subcontract agreement. Both counterclaims were brought pursuant to the Court's supplemental jurisdiction under Section 1367.

## II. Analysis

### A. Defendants' Motion for Summary Judgment

Although the parties raise several arguments, Defendants rely primarily on the language of the subcontract agreement for the proposition that the contract expressly waives Plaintiff's Miller Act claim pending resolution of the dispute procedures set forth in the primary contract between Defendant Boland and the Navy. Defendants argue that both of Plaintiff's claims should be deemed waived for failure to invoke the administrative remedies set forth in the primary contract.

Plaintiff argues in response that a subcontractor is not necessarily bound by the standard disputes clause of the primary contract. It urges the Court to focus on the parties' intent and their respective bargaining positions. In the alternative, it seeks a stay of this action until it has exhausted the remedies set forth in the subcontract.

The Miller Act is intended in part to protect the rights of a subcontractor on a government contract. The subcontractor's rights may be waived, however, where the subcontract contains a provision making the disputes clause of the primary contract expressly applicable to the subcontract, and where the subcontract contains an express waiver of the subcontractor's Miller Act remedy. *United States f/u/b/o N.U., Inc. v. Gulf Ins. Co.*, 650 F.Supp. 557, 558 (S.D.Fla.1986) (King, C.J.).

The Court finds that both conditions have been met here. Paragraph 16.A of the subcontract is explicit in its reference and incorporation of the disputes clause of the primary contract. (Pl.Compl.Ex. B.) It further provides that the "[s]ubcontractor shall first pursue and fully exhaust [the procedures set forth in the standard disputes clause of the primary contract] before commencing any other action against Contractor for any claims it may have arising out of its performance of the Work herein." (Pl. Compl.Ex. B.) The language to which the parties agreed clearly encompasses both the Miller Act and common law claims.

The subcontractor is not, however, left solely at the mercy and discretion of the primary contractor. Paragraph 16.A expressly obligates Defendant Boland to "prosecute all claims submitted by Subcontractor under the contractual remedial procedure of the Prime Contract on behalf of and to the extent required by the Subcontractor." (Pl. Compl.Ex. B.)

Moreover, the subcontract contains a provision pursuant to which Plaintiff "agree[d] to stay an action or claim against [the prime contractor's Miller Act bond] pending the complete and final resolution of the Prime Contract's contractual remedial procedure." (Pl.Compl.Ex. B., ¶ 25.A.)

With full knowledge of its duties and benefits under the subcontract, Plaintiff chose to institute this suit rather than pursue the remedies clearly delineated in the subcontract. The Court cannot rewrite the parties' agreement, particularly when the language is clear and unambiguous. It will, however, treat Defendants' motion as one to dismiss the action. Accordingly, Plaintiff's claims are dismissed without prejudice to pursue

the remedies provided for in the contract between the parties.

### B. State Law Counterclaims

██ Defendant Boland asserted counterclaims against Plaintiff Trans Coastal and its surety, Intercargo. The Court's dismissal of the underlying claims leaves the counterclaims without an independent basis of federal jurisdiction. Nonetheless, the Court will exercise its discretion and proceed to trial on the counterclaims.

The limits of pendent jurisdiction have long been debated. The issue has often been framed in terms of the timeline of the proceedings. For example, the Supreme Court long ago held that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). The Supreme Court has subsequently acknowledged, however, that there is no hard or fast rule on which a district court can rely. *See Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988).

The lower federal courts, ever mindful of issues of judicial economy and fairness to litigants, have given considerable weight to those factors in determining whether retention of jurisdiction is proper in the absence of independent jurisdictional grounds. *See, e.g., Taylor v. First of America Bank–Wayne*, 973 F.2d 1284, 1288 (6th Cir.1992). In *Taylor*, the Court noted that the case had been pending before the district court for nearly two years, during which time discovery had been completed and a voluminous record compiled. *Taylor*, 973 F.2d at 1288.

Here, the Complaint has been pending for eighteen months, and the counterclaim for seventeen months. Discovery is complete and the case is at the eve of trial. *Cf. Eubanks v. Gerwen*, 40 F.3d 1157, 1162 (11th Cir.1994) (instructing district court to "carefully consider whether to dismiss" Plaintiff's state law claim where summary judgment on the federal claims had been granted "early on" and where "it would not appear either unfair or inconvenient to the parties to re-quire [P]laintiff to pursue [the state claim] in state court.")

To require Counterplaintiff Boland to pursue its remedies in state court would, at this juncture, be unfair. It would be similarly unfair to Counterdefendants, who undoubtedly have a strong interest in finality. The counterclaims are both essentially for breach of contract, hardly a novel or complex issue of state law in which the federal court should decline to intervene. *See Merino Vinas v. Boto*, 827 F.Supp. 83, 90 (D.P.R.1993); *Rivkin v. County of Montgomery*, 838 F.Supp. 1009, 1015 (E.D.Pa.1993).

The Court concludes, therefore, that trial on the counterclaims is proper. *See Taylor*, 973 F.2d at 1288; *Enercomp, Inc. v. McCorhill Pub., Inc.*, 873 F.2d 536, 545 (2d Cir. 1989) (holding that jurisdiction should have been retained due to unfairness in going from an imminent federal trial to a state court where trial would not ensue for months).

### C. Counterdefendant's Motion for Partial Summary Judgment

One of the counterclaims brought by Boland is against Intercargo for the latter's alleged breach of its obligations under the performance bond issued to Trans Coastal. Intercargo seeks summary judgment to the effect that its liability is limited to the penal sum of its bond, including the attorney's fees claimed by Boland.

Having reviewed the record and heard oral argument on the motion, the Court concludes that this issue is best addressed at the conclusion of the proceedings, after the underlying issue of liability has been adjudicated.

### III. Conclusion

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Defendants' Motion for Summary Judgment, treated as a Motion to Dismiss, be, and the same is hereby, GRANTED without prejudice to Plaintiff's rights to pursue the remedies pro-

vided for in the contract between the parties. It is

FURTHER ORDERED and ADJUDGED that Counterdefendant Intercargo's Motion for Partial Summary Judgment be, and the same is hereby, DENIED without prejudice to reassert at the conclusion of trial.

DONE and ORDERED.