**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-12386

Non-Argument Calendar

_____

ERNESTO LONTOC,

Plaintiff-Appellant,

*versus*

SCHOOL BOARD OF PALM BEACH COUNTY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:23-cv-81196-DMM

_____

Before LUCK, LAGOA, and KIDD, Circuit Judges.

PER CURIAM:

Appellant Ernesto Lontoc sued the School Board of Palm Beach County for race discrimination under 42 U.S.C. § 1983 and the Florida Civil Rights Act, alleging that he was denied the opportunity to apply for a lateral job transfer because of his race. The district court dismissed Lontoc's § 1983 claim and, after declining to remand the case to state court, entered summary judgment for the School Board on the remaining state-law claim. Lontoc now appeals the district court's order of dismissal, the district court's order denying remand, and the district court's order granting summary judgment. After careful review, we affirm each of those orders, along with the final judgment for the School Board.

## I.    FACTUAL and PROCEDURAL HISTORY[1]

Ernesto Lontoc, who is a "man of Asian/Filipino ancestry," has worked for the School Board of Palm Beach County (the "School Board") since 2001 and currently holds the position of Grant Compliance Specialist II. Throughout his tenure in that role,

---

[1] This recitation of the facts is based on the undisputed factual record at summary judgment, taken in the light most favorable to Lontoc. That said, both the district court's summary-judgment and dismissal orders are at issue in this appeal. "Because there are differences between the ground rules that apply to motions to dismiss as opposed to motions for summary judgment, we adjust for those differences in our ensuing discussion" of the order of dismissal. *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 26 (1st Cir. 2004) (internal citations omitted).

Loctoc "always received" the highest possible performances ratings.

In October 2019, Nicole Smith, the School District's Director of Federal and State Programs, announced during a staff meeting that there would be an opportunity to "shadow" the outgoing "Title I Grant Compliance Specialist Non-Public Work" officer, Tanya Daniels, who would be retiring at the end of the year. Diane Owens, who was the only staff member "with non-public [grant] experience and the only person interested in the position at that time," was selected to shadow Daniels and, on February 18, 2020, began "to transition" into Daniels's role. That same day, Smith announced that she would be "opening up another . . . Grants Compliance Specialist Non-Public" position and "encouraged her entire department"—including Lontoc—"to apply if they were interested." The School Board's human-resources department created a job opening report for the second position—which was assigned "position number 10105717"—and posted the job opening for the "ten working days" between February 24 and March 5, 2020. Lontoc expressed he was interested in applying for that role.

Forty-one candidates submitted applications for this position. Lontoc, however, was not one of them. Apparently, Lontoc believed that opening was to find Daniels's replacement and did not apply thinking that position "[w]as for Diane Owens." Lontoc expected Smith to tell him when the position would open up for applicants, and, after four months of waiting, emailed Smith on June 2 to express that he looked forward to applying to the second

position.  At no time did Lontoc search to see whether this position had been posted.

On June 17, Smith was informed that Deputy Superintendent Keith Oswald had decided that Dr. Fenee Russ, who is "a woman and African American," was to be assigned Position 10105717.  Russ had previously worked for the School Board as an assistant principal and, most recently, as a School Improvement Specialist.  After the latter position had been eliminated, Oswald selected her to transfer to the vacant Grants Compliance Specialist job.  Russ would be paid a $93,705 salary (including a $2,500 advanced-degree supplement), which was the same salary she made as a School Improvement Specialist.

A few weeks later, Smith held a Google Meet call with Lontoc.  During the call, she told him that the second position— *i.e.*, Position 10105717—would be filled by an internal placement and that it would not be "reposted."  On July 1, 2020, Russ was officially placed into Position 10105717 and Owens into Position 10107169.  Once Oswald "made the placement" for Russ, Superintendent Donald E. Fennoy II "recommended that the . . . School Board approve Ms. Russ'[s] appointment and transfer," and the School Board later did so.  According to Oswald, Russ's transfer was made as an "ADA accommodation" to provide her with a job until she could medically retire in December 2020.  Lontoc sees it differently.  In his view, the School Board selected Russ for the position— and barred Lontoc from applying—on account of race.

On August 8, 2023, Lontoc sued the School Board in Florida state court, alleging claims for race discrimination under the Florida Civil Rights Act and 42 U.S.C. § 1983. The Board removed the case to the U.S. District Court for the Southern District of Florida and moved to dismiss. The district court granted that motion as to the federal claim, finding that Lontoc had failed to plead sufficient facts to show that the alleged discrimination was caused by a "final policymaker" of the School Board, as needed to hold it liable. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978). As the district court saw it, although Lontoc alleged that Oswald "made the decision to award the contested position" to Russ, the court's review of Florida law made it "appear[ ] that the official responsible, whose actions could make the School Board liable," was actually Superintendent Fennoy—not Oswald. Since Lontoc had not pleaded any additional allegations as to Oswald's responsibilities or Superintendent Fennoy's decision, the district court dismissed Lontoc's § 1983 claim without prejudice and allowed Lontoc to file an amended complaint.

Lontoc's verified amended complaint—the operative complaint here—reasserted his claims under the FCRA (Count I) and § 1983 (Count II). The amended complaint now alleged that "Mr. Oswald and Dr. Fennoy were the decision makers that denied Plaintiff the position and who placed Ms. Russ despite her lack of qualifications and claimed inability to work." The School Board moved to dismiss Count II, arguing that Lontoc had once again failed to plead a viable § 1983 claim. This time around, the district court found that the School Board was actually "the final policy maker"

for *Monell* purposes.  Because Lontoc alleged that "the superintendent," rather than the School Board, "was responsible for the decision" to hire Russ, the district court concluded that Lontoc still had not pleaded a viable claim.  Lontoc did not seek further leave to amend his complaint.

Following the dismissal of his federal claim, Lontoc moved to have the remaining FCRA claim remanded to state court. The district court denied that motion.  After discovery, the School Board moved for summary judgment on the FCRA claim. The district court granted that motion, determining that Lontoc had not established that he suffered an adverse employment action, and entered final judgment for the School Board.  Lontoc sought reconsideration of the summary-judgment order, which the district court denied.  Lontoc timely appealed the adverse final judgment and orders granting summary judgment and denying reconsideration thereof.[2]

## II.    STANDARDS OF REVIEW

We review *de novo* the district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, accepting the complaint's allegations as true and construing them in the light most

---

[2] Because Lontoc appealed the final judgment, the district court's non-final orders dismissing the § 1983 claim and denying remand are properly before this Court as well.  *See Kirkland v. Nat'l Mort. Network, Inc.*, 884 F.2d 1367, 1369–70 (11th Cir. 1989).

24-12386                Opinion of the Court                    7

favorable to the plaintiff.  *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012) (quotation omitted).

A district court's decision relating to the exercise of supplemental jurisdiction over a state-law claim is reviewed for abuse of discretion.  *Silas v. Sheriff of Broward Cnty.*, 55 F.4th 863, 865 (11th Cir. 2022).  Under this standard, we must affirm unless we determine that the district court made a clear error of judgment or applied an incorrect legal standard.  *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005).

We review *de novo* the district court's grant of summary judgment, viewing the evidence and drawing all reasonable inferences in favor of the nonmoving party.  *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).  Summary judgment is appropriate when a movant shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)).

## III.    ANALYSIS

On appeal, Lontoc raises three issues.  First, Lontoc challenges the dismissal of his § 1983 claim for failure to state a claim. Second, Lontoc maintains that the district court, upon dismissing that claim, abused its discretion by retaining supplemental jurisdiction over his remaining FCRA claim.  Third, Lontoc argues that the

district court erred by granting the School Board summary judgment on the FCRA claim.  We address each issue in turn.

### A.    The School Board's Motion to Dismiss Count II

We first consider whether the district court erred in concluding that Lontoc's amended complaint failed to plausibly allege a race-discrimination claim against the School Board under the Fourteenth Amendment and § 1983.

We assess § 1983 claims brought in the context of public employment under the same standard that governs employment-discrimination claims under Title VII. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).  That standard generally requires the plaintiff to allege "(1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to adverse employment action; and (4) her employer treated similarly situated employees outside her class more favorably." *Id.* (citing *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003)).  "When the employer is a municipality," however, more is needed to state a claim. *McCarthy v. City of Cordele*, 111 F.4th 1141, 1146 (11th Cir. 2024).[3]  A municipality will be held liable for a constitutional tort only if the allegedly unconstitutional action was taken pursuant to a "municipal 'policy or custom.'" *Id.* (citing *Monell*, 436 U.S. at 694).[4]

---

[3] The parties agree that Lontoc's § 1983 claim against the School Board is governed by our municipality-liability standard.

[4] Lontoc argues for the first time on appeal that the School Board had an "unofficial custom and widespread practice of placing employees into vacant positions without application or interview."  Even if Lontoc had not forfeited this

24-12386                Opinion of the Court                9

An employment decision "qualifies as a municipal policy if the decisionmaker 'possesses *final authority* to establish *municipal policy* with respect to the action ordered.'" *Quinn v. Monroe County*, 330 F.3d 1320, 1325 (11th Cir. 2003) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). We have interpreted the "policy or custom requirement to preclude § 1983 municipal liability for a subordinate official's decisions when the final policymaker delegates decisionmaking discretion to the subordinate, but retains the power to review the exercise of that discretion." *Id.* (quoting *Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir. 1997)). Accordingly, "a municipal official does not have final policymaking authority over a particular subject matter"—and thus, cannot make municipal policy on that subject—"when that official's decisions are subject to meaningful administrative review." *Scala*, 116 F.3d at 1401 (citations omitted).

In his amended complaint, Lontoc alleges that "Oswald was delegated the power to place Ms. Russ" in her new role by Superintendent Fennoy; that Fennoy, in turn, "recommended that the . . . School Board approve Ms. Russ'[s] appointment and transfer as Grant Compliance Specialist"; and that the School Board later approved the transfer once Russ "had been placed in the position by

---

issue by failing to raise it before the district court, *see Compulife Software, Inc. v. Newman*, 111 F.4th 1147, 1158 (11th Cir. 2024) ("[W]e do not consider issues for the first time on appeal." (citing *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004))), the amended complaint provides no factual basis from which we could reasonably infer such a custom exists, *see Ireland v. Prummell*, 53 F.4th 1274, 1290 (11th Cir. 2020).

Mr. Oswald." Lontoc specifically names "Mr. Oswald and Dr. Fennoy" as "the decision makers that denied [Lontoc] the position and who placed Ms. Russ despite her lack of qualifications and claimed inability to work."

The identity of the final policymaker is a question of state law. *See Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1480 (11th Cir. 1991); *see also Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1292 (11th Cir. 2004) ("To determine if someone is a final policy maker, we look not only to 'state and local positive law,' but also [to] 'custom and usage having the force of law.'" (first quoting *McMillian v. Johnson*, 88 F.3d 1573, 1577 (11th Cir. 1996); then citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989))). Florida law has long recognized that, "[b]y statute, the school board is the policymaking body for the school district, while the superintendent is the chief executive officer of the school board and the chief administrator of the school district." *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1230 (11th Cir. 2022) (emphasis omitted) (quoting *Greene v. Sch. Bd. of Hamilton Cnty.*, 444 So. 2d 500, 501 (Fla. 1st DCA 1984)). Regarding personnel decisions, a superintendent has the power to recommend candidates "for positions to be filled," but a school board ultimately retains the authority to "reject for good cause any employee nominated." Fla. Stat. § 1012.22(1)(a)(1)–(a)(2).

Here, the district court correctly identified the School Board as the "final policymaker" with respect to Russ's transfer, as the School Board "retain[ed] the power to review," and did review,

24-12386                Opinion of the Court                11

Superintendent Fennoy and Oswald's "exercise of discretion" in making that personnel decision. *Quinn*, 330 F.3d at 1325 (quotation omitted).[5] For that reason, the district court held that Lontoc necessarily failed to state a claim against the School Board because the amended complaint instead "alleged that the superintendent was responsible for the decision that allegedly violated his rights." That conclusion, however, does not necessarily follow the premise.

The district court appears to have conflated the identities of the "final *policymaker*" and the "official *decisionmaker*." As we explained in *Quinn*, "[t]he 'final policymaker' inquiry addresses who takes actions that may cause the municipality . . . to be held liable for a custom or policy," while the "'decisionmaker' inquiry addresses who has the power to make official decisions and, thus, be held individually liable." *Id*. at 1327. Under a ratification theory of *Monell* liability, a municipality can still be held responsible "when a subordinate public official makes an unconstitutional decision" that

---

[5] In reply, Lontoc attempts to undermine the materiality of the School Board's review authority, relying on our caselaw's recognition that, when "a higher official has the power to overrule a decision but as a practical matter never does so, the decision maker may represent the effective final authority on the question." *Holloman*, 370 F.3d at 1293 (quoting *Bowen v. Watkins*, 669 F.2d 979, 989 (5th Cir. 1982)). We need not "address an argument advanced by an appellant for the first time in a reply brief." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 683 (11th Cir. 2014) (quotation omitted). In any event, Lontoc does not allege any facts regarding the School Board's record of overruling recommendations by its subordinates from which we could plausibly infer its review authority is illusory in practice. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

is "then adopted by someone who does have final policy making authority." *Matthews v. Columbia County*, 294 F.3d 1294, 1297 (11th Cir. 2002). So despite having only identified the official decisionmakers for Russ's transfer, Lontoc may have been able to state a claim against the School Board if he otherwise pleaded sufficient facts to plausibly establish that the School Board, as the final policymaker, ratified the decisionmakers' unconstitutional conduct.

Lontoc, however, did not do that. For a municipality to be liable under a ratification theory, "[t]he final policymaker . . . must ratify not only the decision itself, but also the unconstitutional basis for it." *Id.* And when, as here, "the final policymaker for a challenged employment decision was a multimember body, the plaintiff must allege that 'a majority' of the members voted in favor of the decision 'for an unconstitutional reason.'" *McCarthy*, 111 F.4th at 1146 (quoting *Matthews*, 294 F.3d at 1295). The amended complaint makes no allegations as to the School Board's process or motivations for approving Russ's appointment. To rectify this pleading deficiency, Lontoc explains that he is proceeding under a "cat's paw theory," through which the discriminatory animus of "the biased recommender" can be imputed on "the actual decisionmaker" if the latter "followed the biased recommendation without independently investigating" it. *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999). As Lontoc sees it, "[u]nder the cat's paw theory, Oswald's discriminatory animus could be imputed to both Fennoy and the School Board itself."

Our Circuit has yet to determine whether the cat's paw theory—which most-commonly arises in cases brought under federal antidiscrimination statutes to establish causation, *see, e.g.*, *id.*; *Staub v. Proctor Hosp.*, 562 U.S. 411 (2011)—extends to the *Monell* context. None of our sister circuits have affirmatively endorsed that approach, *see Naumovski v. Norris*, 934 F.3d 200, 222 (2d Cir. 2019); *Waters v. City of Chi.*, 580 F.3d 575, 586 n.2 (7th Cir. 2009); *Lawrence v. Sch. Dist. No. 1*, 560 F. App'x 791, 794–95 (10th Cir. 2014), and our constituent district courts are (at best) split on the issue, *compare Jackson v. City of Centreville*, 899 F. Supp. 2d 1209, 1222 (N.D. Ala. 2012), *with Freeman v. Jupiter Inlet Colony*, 2025 WL 1349497, at *12–14 (S.D. Fla. Apr. 8, 2025). But we need not resolve this issue today. Even if we assume that the cat's paw theory applies in the *Monell* context, Lontoc still would not have pleaded a viable claim, as he simply does not make "*any* allegations that impugn or otherwise undermine the independence of the . . . [School] Board" and provides no facts regarding the School Board's review process "to create an inference that [the School Board] was not an autonomous decisionmaker." *Carruth v. Bentley*, 942 F.3d 1047, 1057 (11th Cir. 2019).

"We may affirm the district court's judgment on any ground that appears in the record whether or not that ground was relied upon or even considered by the court below." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). Although dismissal was premature under the district court's stated reasoning, we are nonetheless satisfied that Lontoc failed to plausibly show that the School Board "itself cause[d] the constitutional violation at

issue" under any theory of municipal liability.  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

Lontoc asserts, in the alternative, that he should have been allowed to amend his complaint to identify the School Board as the relevant decisionmaker, arguing that he instead named Superintendent Fennoy in reliance on the first dismissal order's observation that "it appears that the official responsible, whose actions could make the School Board liable, is the Superintendent."  As *Quinn* makes clear, that change alone would not save Lontoc's § 1983 claim.  *See* 330 F.3d at 1325–27.  Moreover, Lontoc never requested leave to amend below, and a district court has no obligation "to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."  *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002).  Therefore, we affirm the district court's dismissal of Lontoc's § 1983 claim.

## B.    Lontoc's Motion for Remand

Having determined that the district court properly dismissed Lontoc's § 1983 claim, we next consider whether the court abused its discretion by continuing to exercise supplemental jurisdiction over the remaining state-law claim.  "A district court can hear a case only if it has 'at least one of three types of subject matter jurisdiction: (1) jurisdiction under specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).'"  *Thermoset Corp. v. Bldg.*

24-12386               Opinion of the Court                    15

*Materials Corp. of Am.*, 849 F.3d 1313, 1317 (11th Cir. 2017) (quoting *PTA–FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1305 (11th Cir. 2016)). Congress has afforded federal courts supplemental jurisdiction over state-law claims in "limited circumstances," including "when the state claims 'arise out of a common nucleus of operative fact with a substantial federal claim.'" *Silas*, 55 F.4th at 865 (first quoting *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006); then citing 28 U.S.C. § 1367(a)). Supplemental jurisdiction, once attached, generally "continues throughout the proceeding." *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984).

If all federal claims are later dismissed from a case, a court "*may* decline to [continue to] exercise supplemental jurisdiction over a [state] claim," 28 U.S.C. § 1367(c) (emphasis added), though it is "not required" to do so, *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1568 (11th Cir. 1994); *see also* A. Scalia & B.A. Garner, *Reading Law: The Interpretation of Legal Texts* 112 (2012) ("Mandatory words impose a duty; permissive words grant discretion.").[6] A

---

[6] The Supreme Court recently held that a district court must dismiss remaining state-law claims if a plaintiff instead *amends* her complaint to excise the federal claims. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025). Neither the holding nor the reasoning of *Royal Canin* alters the discretionary nature of post-*dismissal* supplemental jurisdiction. *See id.* at 33–34 ("That § 1367(c) does not [confer discretion over excised federal claims]—that even while it addresses, for example, *dismissals of federal claims*, it makes no mention of amendments deleting them—shows that § 1367(a) does not extend so far. Or otherwise said, there is no discretion to decline supplemental jurisdiction here because there is no supplemental jurisdiction at all. Once the plaintiff has

16                    Opinion of the Court                    24-12386

district court retains "broad" discretion to decide whether it will "continue to exercise supplemental jurisdiction over the state claims or to dismiss them." *Silas*, 55 F.4th at 865–66 (citations omitted). "[C]onsiderations of judicial economy, convenience, fairness, and comity may influence the court's discretion." *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) (citation omitted); *accord United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

Here, the district court's decision to proceed with Lontoc's FCRA claim fell within the proper bounds of its discretion. The district court explained that judicial economy and convenience would not be well served by forcing the parties to relitigate the case in state court, as they had already completed discovery, briefed their motions for summary judgment, and were only a month away from trial. *See, e.g.*, *Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1288 (6th Cir. 1992) (finding no abuse of discretion where "the parties had completed discovery" and "an extensively briefed summary judgment motion was ripe for a ruling"). The district court also determined that the comity concerns stemming from its adjudication of the FCRA claim were minimal, since such claims "are analyzed under the same framework" as federal Title VII claims, and thus present no novel issues of state law. *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010); *cf. Suez Equity Invs., L.P. v.*

---

ditched all claims involving federal questions, the leftover state claims are supplemental to nothing—and § 1367(a) does not authorize a federal court to resolve them." (emphasis added)).

24-12386                    Opinion of the Court                    17

*Toronto-Dominion Bank*, 250 F.3d 87, 102 (2d Cir. 2001) (finding no abuse of discretion where "standards governing the state and federal law causes of action are similar"). Given this reasoning,[7] we cannot say that the district court made a "clear error of judgment" by continuing to exercise supplemental jurisdiction over the FCRA claim. *Roach*, 411 F.3d at 1330. Thus, the district court did not abuse its discretion in denying Lontoc's motion to remand.

### C. The School Board's Motion for Summary Judgment on Count I

Lastly, we review the entry of summary judgment for the School Board on Lontoc's FCRA claim. As noted above, FCRA employment-discrimination claims are analyzed "under the same

---

[7] We are not persuaded by Lontoc's argument that the district court applied the wrong legal standard by "conflat[ing]" its discussion of the judicial-economy and convenience factors, and by not specifically addressing the fairness factor in its opinion. Notwithstanding Lontoc's arguments to the contrary, a court's consideration of the supplemental-jurisdiction factors need not be so wooden. "[T]he doctrine of [supplemental] jurisdiction . . . is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Ameritox, Ltd. v. Millennium Lab'ys, Inc.*, 803 F.3d 518, 530 (11th Cir. 2015) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). The factors the Supreme Court identified in *Gibbs*, in turn, are simply meant to guide the district court's discretion if they are relevant. *See Palmer*, 22 F.3d at 1569; *see also Estate of Amergi ex rel. Amergi v. Palestinian Auth.*, 611 F.3d 1350, 1365 (noting the district court "is *permitted* to consider inconvenience, expense, and fairness to the parties" (emphasis added)). We see no abuse of discretion in the district court discussing related factors in context with each other or in declining to expound on a factor that Lontoc acknowledges has little relevance here.

framework" that governs federal Title VII claims, *Alvarez*, 610 F.3d at 1271, and establishing the *prima facie* case for discrimination requires the plaintiff to show "(1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to adverse employment action; and (4) her employer treated similarly situated employees outside her class more favorably," *Crawford*, 529 F.3d at 970.

The district court found that Lontoc had not substantiated that he suffered an adverse employment action, foreclosing this claim. *See Holland v. Gee*, 677 F.3d 1047, 1056 (11th Cir. 2012) ("In a Title VII case, an adverse employment action is not only an element of the prima facie case, but also of the claim itself." (internal citation omitted)). To reach this conclusion, the court relied on Lontoc's admissions in his Response Statement of Material Facts that Position 10105717 was advertised for the ten-day period between February 24 and March 5, 2020, that he was encouraged to apply for that role, that he did not apply, and that Position 10105717 ultimately was given to Russ. Those admissions effectively defeat Lontoc's allegations of discrimination as a matter of law, since the failure-to-hire cannot be an adverse employment action if the plaintiff never applied for the position when given the opportunity to do so. *See Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1275 (11th Cir. 2002); *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 n.7 (11th Cir. 1983). Lontoc now claims that the "positions that Owens and Russ were assigned were switched" due to a "clerical error" attempting to construct a factual dispute about whether the role that went to Russ was actually posted and advertised. But

Lontoc did not properly raise this issue at summary judgment and the district court did not err by holding Lontoc to his own factual admissions. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1302–03 (11th Cir. 2009); *Reese v. Herbert*, 527 F.3d 1253, 1266–69 (11th Cir. 2008).

Regardless, none of the evidence Lontoc relied on below to rebut the School Board's evidence that Position 10105717 was advertised and open to applicants supports the inference that the position numbers were switched or that Lontoc was barred during the application window from competing for the job that ultimately went to Russ. *Cf. Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1121 (11th Cir. 1993) ("[A]ppellate review of summary judgment rulings is conducted on the basis of the record presented to the district court and we ordinarily decline to take into account evidence referred to for the first time on appeal."). Instead, the undisputed evidence shows that Lontoc was "encouraged" by Smith to apply for Position 10105717 and that several candidates (but not Lontoc) did so. That Smith later told Lontoc that the position would be filled internally months after the job posting had closed does not mean that Lontoc was "prevented" from applying with the other candidates. Because Lontoc "knew about the availability of [the] position[ ] and chose not to formally apply," he cannot now complain that he suffered an adverse employment action by not getting the job. *Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1346 (11th Cir. 2003). We thus conclude that the district court properly

entered summary judgment for the School Board on the FCRA claim.[8]

## IV.    CONCLUSION

For the reasons stated, we affirm the district court's entry of final judgment for the Defendant, as well as the other nonfinal orders.

**AFFIRMED**.

---

[8] As we conclude that there was no error in the entry of summary judgment, we also reject Lontoc's appeal of the order denying reconsideration of the entry of summary judgment for the School Board.  *See, e.g.*, *New Smyrna-De Land Drainage Dist. v. Thomas*, 234 F.2d 338, 341 (5th Cir. 1956) ("Since we find no error in the [underlying] order . . ., we see no reason to consider the appeal from the order denying the appellant's motion for reconsideration.").