814 F.2d 311
 55 USLW 2525, Fed. Sec. L. Rep. P 93,206
 Joel R. GAFF, Plaintiff-Appellant,
v.
FEDERAL DEPOSIT INSURANCE CORPORATION, Receiver of National
Bank and Trust Company of Traverse City, a
National Banking Association; David E.
Pearce; and Bruce W. Mann,
Defendants-Appellees.
 No. 86-1119.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 20, 1987.
Decided March 20, 1987.
 
 Larry C. Willey, Grand Rapids, Mich., Stephen Novak, argued, Novak & Macey, Chicago, Ill., Kenneth S. Schlessinger, Richard A. Rossman, argued, Mark W. Yonkman, Detroit, Mich., for defendants-appellees.
 Stuart D. Hubbell, Traverse City, Mich., J.B. Donaldson, argued, Dykema, Gossett, Spencer, et al., Bloomfield Hills, Mich., Lawrence G. Campbell (Pearce), Dickinson, Wright, Moon, et al., Detroit, Mich., R.A. Wilhelm, for plaintiff-appellant.
 Before ENGEL and BOGGS, Circuit Judges; and CONTIE, Senior Circuit Judge.
 CONTIE, Senior Circuit Judge.
 
 
 1
 Plaintiff Joel R. Gaff appeals from the district court's order dismissing, pursuant to Fed.R.Civ.P. 54(b), amended Count V of Gaff's complaint. Gaff asserts that Count V sufficiently states three sets of claims which he may pursue in federal court: federal claims arising out of the federal banking laws; federal claims arising out of the federal securities laws; and pendent state law claims. We find that the district court correctly dismissed with prejudice Gaff's federal law claims, but should not have dismissed with prejudice Gaff's state law claims. Accordingly, we affirm in part and reverse in part the judgment of the district court.
 
 I.
 
 2
 This procedurally complex case began on March 20, 1981, when James Dalrymple filed a Michigan state court action against the National Bank and Trust Company of Traverse City (NBT), David E. Pearce (the Chairman of the Board of NBT), and Bruce W. Mann (NBT's president). Dalrymple, who was NBT's past legal officer, originally asserted a claim of wrongful discharge and later amended his complaint in September of 1981 to include derivative claims against the bank challenging as violative of state law certain bank transactions and activities of Pearce and Mann which transpired in the late 1970's. On November 4, 1981, appellant Gaff filed a similar complaint against NBT, Pearce and Mann in Michigan state court.
 
 
 3
 The defendants removed both cases to federal district court in late 1981 on the ground that they involved claims arising under the laws of the United States, including the provisions of the National Bank Act, 12 U.S.C. Sec. 21 et seq. The district court subsequently remanded both cases to state court. On remand, the state court consolidated the cases, entering an order to that effect on July 28, 1983.
 
 
 4
 On February 22, 1984, Gaff and Dalrymple filed an "Amended and Supplemental Consolidated Complaint" in state court. Counts I-IV of the Consolidated Complaint alleged shareholder derivative actions on behalf of NBT. Count V was labeled as a "Stockholder's Class Action," and incorporated by reference the same facts alleged in support of Counts I-IV. Count V alleged that Pearce and Mann breached fiduciary duties owed both to NBT and the shareholders by engaging in transactions for the purpose of ensuring their control over NBT and by failing to fully disclose the nature and details of such transactions. The relief sought with respect to claims in Count V included (1) a declaration that the defendants' conduct was wrongful, (2) a declaration that the formation of a voting trust violated preemptive rights of the shareholders of NBT, (3) damages "in such amount as the Court shall deem appropriate to sanction such defendants' conduct," and (4) an accounting by the defendants to determine the amount of damages sustained by the shareholders.
 
 
 5
 On March 9, 1984, the Comptroller of the Currency declared NBT insolvent, closed the bank, and appointed the Federal Deposit Insurance Corporation (FDIC) as receiver of the bank's assets. The FDIC in its corporate capacity advanced a substantial sum of money to the FDIC as receiver in order to protect and insure the bank's depositors and creditors; in exchange, the FDIC in its corporate capacity received, among other things, an assignment of all causes of action against NBT's former officers and directors for damages caused to NBT. On March 15, 1984, the FDIC in its capacity as receiver removed the consolidated Gaff case to federal court. On March 21, 1984, the FDIC in its corporate capacity filed a "Motion to Intervene and Motion to Dismiss Present Party Plaintiffs," in an attempt to assume control over the consolidated Gaff case, and a motion for a stay of the proceedings in the consolidated case. Defendants Pearce and Mann subsequently filed a motion to dismiss Count V of the Gaff consolidated Complaint, alleging that although Count V purported to be a direct shareholder action, it was in reality merely another derivative claim for injuries sustained by NBT.
 
 
 6
 The district court resolved these pending motions at a hearing held on February 11, 1985. The court granted the FDIC's motion to intervene, reasoning that the FDIC was a proper party plaintiff, but denied the FDIC's motion to dismiss. Instead of completely dismissing Gaff and Dalrymple from the action, the court stayed any further action by them on the derivative counts (Counts I-IV) of their Consolidated Complaint, thus enabling the FDIC to pursue unfettered the derivative claims. To this end, the court accepted the FDIC's second amended complaint which named various former officers and directors of NBT, including Pearce and Mann, and which sought fifteen million dollars in damages. With regard to Count V of the Consolidated Complaint, the court denied the defendants' motion to dismiss and granted leave to Gaff and Dalrymple to amend the claim.
 
 
 7
 Gaff filed on February 26, 1985, his amendment to Count V, alleging federal banking and federal securities law claims in addition to the previously alleged state common law claims.[1] Amended Count V did not allege any facts different from those previously alleged. For standing to assert his federal banking law claims, Gaff relied on Sec. 53 of the National Bank Act, 13 Stat. 116, presently codified at 12 U.S.C. Sec. 93, and Sec. 22 of the Federal Reserve Act, 38 Stat. 272, presently codified at 12 U.S.C. Sec. 503. Gaff sought essentially the same declaratory, injunctive and monetary relief previously requested in Count V of the Consolidated Complaint.
 
 
 8
 On March 20, 1985, defendants Pearce and Mann filed a motion to dismiss amended Count V pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. The defendants argued that Count V contained only derivative claims and therefore could not be maintained as an individual shareholder action. In support of their assertion that Count V raised only derivative claims, the defendants noted the lack of allegations of personal injury to Gaff as distinct from harm to the corporate entity on the whole.
 
 
 9
 The district court held a hearing on that motion and others on April 4, 1985, and on April 19, filed an opinion denying the motion. The court acknowledged the common law rule that generally a shareholder cannot bring an individual action for harm done to the corporation itself, but went on to note that the rule does not preclude a shareholder from bringing a direct cause of action for injuries sustained personally. After observing that 12 U.S.C. Sec. 93 provides a private right of action in shareholders under proper circumstances, the court concluded that Gaff had sufficiently stated a claim under Sec. 93. As support for its decision, the court relied on a prior Sixth Circuit decision, Marx v. Centran Corp., 747 F.2d 1536, 1540 (6th Cir.1984), cert. denied, 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985), and a Ninth Circuit decision quoted in Marx, Harmsen v. Smith, 542 F.2d 496 (9th Cir.1976), cert. denied, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983).
 
 
 10
 Thereafter, the defendants moved for reconsideration or, in the alternative, for certification of a question to the Sixth Circuit, in light of Warren v. Manufacturers National Bank, 759 F.2d 542 (6th Cir.1985), a just-published decision by this court which the defendants believed cast doubt upon the district court's initial holding. Satisfied that the defendants' motion presented sufficient reasons for reconsideration, the district court filed an opinion on December 26, 1985, granting the defendants' motion to dismiss amended Count V on the grounds that Gaff lacked the requisite standing to pursue the claims raised in Count V.
 
 
 11
 The court first addressed the claims arising under the federal banking acts. After noting that the standing provisions under those acts, 12 U.S.C. Sec. 93 and 12 U.S.C. Sec. 503, are essentially identical, the court observed that the Harmsen case held that minority shareholders of an insolvent bank sufficiently stated an individual action under Sec. 93 even though the only personal injury alleged was the diminution in the value of their stock. The court then explained that it initially seemed that the Marx decision adopted this holding of Harmsen. However, upon analyzing the more recent decision in Warren, the court concluded that the Sixth Circuit rejected the notion that diminution in the value of stock, standing alone, is sufficient personal injury to provide a shareholder standing to bring a direct cause of action under federal law. The court applied its interpretation of Warren to the instant case and found that Gaff did not have standing to bring an individual suit under the federal banking laws because he had alleged only injuries which were suffered by the bank, instead of injuries which were personal in nature.
 
 
 12
 The court also found that Gaff lacked standing to pursue his federal securities claims because he had failed to allege sufficient personal injury arising from the alleged securities law violations. More specifically, the court determined that Gaff only could have suffered personal injury as a result of a substantive violation of the securities laws if he had either purchased or sold stock in connection with such violation; Gaff had not alleged that he was a purchaser or seller during the pertinent times of the complaint.
 
 
 13
 Based on its rulings, the district court dismissed amended Count V and entered a final judgment pursuant to Fed.R.Civ.P. 54(b) to enable this appeal. Although the court did not separately address the state law claims asserted in Count V, it is assumed that the court exercised pendent jurisdiction over those claims and dismissed them with prejudice when it dismissed Count V in its entirety. Gaff subsequently brought this timely appeal.
 
 II.
 
 14
 The first issue before this court is whether the district court erred in holding that Gaff lacked standing to assert a direct claim for monetary damages under the federal banking acts because he had not alleged sufficient personal injury. Analysis of the issue begins with recognition of the general precept of corporate law that a shareholder of a corporation does not have a personal or individual right of action for damages based solely on an injury to the corporation. Twohy v. First Nat'l Bank, 758 F.2d 1185, 1194 (7th Cir.1985); United States v. Palmer, 578 F.2d 144, 145-46 (5th Cir.1978). A suit for damages arising from an injury to the corporation can only be brought by the corporation itself or by a shareholder derivatively if the corporation fails to act, Sherman v. British Leyland Motors, Ltd., 601 F.2d 429, 440 n. 13 (9th Cir.1979), since only the corporation has an action for wrongs committed against it. There is, however, a well-recognized exception to this rule precluding shareholders from bringing individual actions. "[W]here the shareholder suffers an injury separate and distinct from that suffered by other shareholders," or the corporation as an entity, the shareholder may maintain an individual action in his own right. Twohy, 758 F.2d at 1194; see also Empire Life Ins. Co. v. Valdak Corp., 468 F.2d 330, 335 (5th Cir.1972) (shareholder may bring individual action if the injury to the shareholder is peculiar to that shareholder or a specific group of shareholders). A depreciation or diminution in the value of a shareholder's corporate stock is generally not recognized, however, as the type of direct, personal injury which is necessary to sustain a direct cause of action. Stevens v. Lowder, 643 F.2d 1078, 1080 (5th Cir.1981); Papilsky v. Berndt, 466 F.2d 251, 255 (2d Cir.), cert. denied, 409 U.S. 1077, 93 S.Ct. 689, 34 L.Ed.2d 665 (1972); Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 732 (3d Cir.1970), cert. denied, 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971); Erlich v. Glasner, 418 F.2d 226, 228 (9th Cir.1969). As was succinctly stated by the Second Circuit in Vincel v. White Motor Corp., 521 F.2d 1113, 1118 (2d Cir.1975):
 
 
 15
 [W]here an injury is suffered by a corporation and the shareholders suffer solely through depreciation in the value of their stock, only the corporation itself, its receiver, if one has been appointed, or a stockholder suing derivatively in the name of the corporation may maintain an action against the wrongdoer.
 
 
 16
 The reasoning behind this rule is that a diminution in the value of corporate stock resulting from some depletion of or injury to corporate assets is a direct injury only to the corporation; it is merely an indirect or incidental injury to an individual shareholder. Eagle v. American Tel. & Tel. Co., 769 F.2d 541, 545-46 (9th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1465, 89 L.Ed.2d 721 (1986).
 
 
 17
 Thus, if Gaff's amended Count V merely states a derivative action under the federal banking laws, Gaff has no standing to pursue that action as an individual. When the FDIC was appointed receiver of NBT, it took "possession of the books, records, and assets of every description" of NBT. See 12 U.S.C. Sec. 192. Such assets included any action which NBT possessed for damages caused to it. Consequently, when the FDIC chose to pursue actions possessed by NBT, it effectively precluded individual shareholders from bringing derivative actions based on the same conduct. This is the reason that Counts I-IV of the Consolidated Complaint were stayed indefinitely. It is also the basis for the FDIC's claim that amended Count V should be dismissed, since the FDIC considers Count V to state only a derivative action.
 
 
 18
 Gaff, however, contends that Count V asserts "direct" claims under the National Bank Act, 13 Stat. 99, 12 U.S.C. Sec. 21 et seq., and the Federal Reserve Act, 38 Stat. 251, 12 U.S.C. Sec. 221 et seq. Gaff asserts that the standing provisions of those Acts, 12 U.S.C. Sec. 93 and 12 U.S.C. Sec. 503 respectively, create in him a direct cause of action. Section 93 provides in pertinent part:
 
 
 19
 If the directors of any national banking association shall knowingly violate, or knowingly permit any of the officers, agents, or servants of the association to violate any of the provisions of this chapter, all the rights, privileges, and franchises of the association shall be thereby forfeited.... [I]n cases of such violation, every director who participated in or assented to the same shall be held liable in his personal and individual capacity for all damages which the association, its shareholders, or any other person, shall have sustained in consequence of such violation.
 
 
 20
 12 U.S.C. Sec. 93(a) (emphasis added).[2] To support his contention that amended Count V sufficiently states a direct cause of action under Sec. 93 for violations of chapter 2 of Title 12,[3] Gaff relies on the Ninth Circuit's decision in Harmsen v. Smith, 542 F.2d 496 (9th Cir.1976), cert. denied, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983). The Harmsen case clearly supports Gaff's argument.
 
 
 21
 In Harmsen, minority shareholders of an insolvent bank brought a class action in their own right against directors of the bank alleging violations of the National Bank Act and asserting standing pursuant to Sec. 93. The Ninth Circuit was therefore faced with the question of whether the shareholders could maintain their individual actions for damages under Sec. 93. The court examined the principles set forth in Chesbrough v. Woodworth, 244 U.S. 72, 37 S.Ct. 579, 61 L.Ed. 1000 (1917), a Supreme Court decision which had previously interpreted standing under that section, and based on those principles concluded that it was "beyond dispute that under proper circumstances [s]ection 93 creates a direct cause of action by the shareholders against the directors of a national bank." 542 F.2d at 500 (footnote omitted). The Harmsen court recognized, however, that a shareholder's ability to bring an individual action under Sec. 93 was not without limitations. The court emphasized that a shareholder bringing an action under Sec. 93 still had to "demonstrate that the damages he seeks are personal to him [since] Section 93 does not permit him to recover for injuries done to the bank...." Id. The court therefore limited any recovery under Sec. 93 to "such sums as will compensate [the] shareholder for an injury which he, as distinct from the [corporation], has suffered." Id. These statements are all consistent with the common law rules discussed above. The court departed from those generally-accepted principles, however, when it held that the shareholders in that case had alleged sufficient personal injury to bring their direct action under Sec. 93, even though the only damages claimed were the diminution of the value of their shares. Id. at 499, 502. It is this holding which is our primary concern in this case, since Gaff contends that this holding was adopted by this Circuit in Marx v. Centran Corp., 747 F.2d 1536 (6th Cir.1984), cert. denied, 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985).
 
 
 22
 In Marx, a bank holding company shareholder brought a direct cause of action against a federally-chartered bank alleging violations of various provisions of the National Bank Act and breaches of common law fiduciary duties owed to the shareholders. In reviewing the plaintiff's standing to assert the direct action, this court stated that it was " 'beyond dispute that under proper circumstances Section 93 creates a direct cause of action by the shareholders against the directors of a national bank.' " 747 F.2d at 1540 (emphasis added) (quoting Harmsen, 542 F.2d at 500). Each claim of a violation of the federal banking laws was eventually rejected, however, on the grounds that there had not been any violations of the substantive provisions.
 
 
 23
 Gaff contends that when this court quoted Harmsen in Marx, it necessarily adopted the holding in Harmsen that mere diminution in the value of shares is sufficient personal injury to support a direct cause of action by a shareholder under Sec. 93. Gaff therefore concludes that he has standing to bring his personal action under Sec. 93.
 
 
 24
 We disagree with Gaff's interpretation of the holding of Marx. Marx merely recognized the well-accepted principle that Sec. 93 creates a direct cause of action in shareholders "under proper circumstances." This mere recognition of the effect of Sec. 93 did not constitute a wholesale adoption of the more specific holding in Harmsen that a decrease in the value of shares held by a shareholder qualifies as the "proper circumstances" necessary to support a direct cause of action under Sec. 93. In fact, there was no occasion in Marx to address that holding of Harmsen since the plaintiff shareholder in Marx had alleged more than mere diminution in the value of its stock as damages.
 
 
 25
 This court clarified its position on this particular question in Warren v. Manufacturers National Bank, 759 F.2d 542 (6th Cir.1985). There, an individual who was the chief executive, board chairman, and sole shareholder of a steel corporation brought a personal action under the Racketeer Influenced and Corrupt Organization Act (RICO), claiming that the defendant bank had defrauded the corporation and thereby caused the plaintiff to lose his total investment in the corporation. The provision the plaintiff relied on for standing stated that "[a]ny person injured in his person or property by reason of a violation of section 1962" could sue for recovery in federal district court. 18 U.S.C. Sec. 1964(c). This court dismissed the RICO action on the ground that the plaintiff had failed to allege any personal injury and therefore had failed to establish a basis for a direct cause of action cognizable under the pertinent RICO standing provision. The court initially observed that in the plaintiff's capacity as shareholder, "any injury he incurred was actually one sustained by the corporation." 759 F.2d at 544. The court then stated:
 
 
 26
 "An action to redress injuries to a corporation cannot be maintained by a shareholder in his own name but must be brought in the name of the corporation. The shareholder's rights are merely derivative and can be asserted only through the corporation. Although this rule does not apply in a case where the shareholder shows a violation of duty owed directly to him, diminution [sic ] in value of the corporate assets is insufficient direct harm to give the shareholder standing to sue in his own right."
 
 
 27
 Id. (emphasis added), quoting Stevens v. Lowder, 643 F.2d 1078, 1080 (5th Cir.1981) (citation omitted). Although Stevens involved federal antitrust laws, Warren expressly held that the general rule enunciated in Stevens applied "with equal force to actions brought under RICO." Id.
 
 
 28
 We find that in Warren this Circuit conclusively adopted the general rule that a shareholder does not have standing to bring a direct cause of action under federal law when the only damage alleged is the diminution in the value of corporate shares. This rule applies with equal force to an action brought under Sec. 93 of the National Bank Act as well as actions brought to redress violations of the federal antitrust laws, see Stevens, 643 F.2d at 1080, or actions brought under RICO. See Warren, 759 F.2d at 544; see also Rand v. Anaconda-Ericsson, Inc., 794 F.2d 843, 849 (2d Cir.1986). When this court adopted this general rule in Warren, it did not rule in a manner inconsistent with Marx, but merely elaborated on the meaning of the phrase "under proper circumstances" which was adopted in Marx. Consequently, we still recognize, as we did in Marx, that Sec. 93 enables a shareholder to bring a direct federal action against directors of national banks, but only when the shareholder has sustained personal and direct injuries. We simply conclude that damages resulting from directors' misconduct which merely consist of the diminishment or destruction of the value of corporate stock do not qualify as a direct or personal injury to a shareholder and therefore will not support a direct cause of action under Sec. 93. While this conclusion is contrary to the specific holding in Harmsen, it is consistent both with the common law principles discussed above and with the general principles governing Sec. 93 actions set forth in Chesbrough v. Woodworth, 244 U.S. 72, 37 S.Ct. 579, 61 L.Ed. 1000 (1917). It is also consistent with the admonitions in Harmsen that Sec. 93 does not permit a shareholder to recover for injuries done to the bank, but instead requires a shareholder bringing a direct action under its authority to show that the damages he seeks are personal to him and were incurred directly.
 
 
 29
 With those general pronouncements in mind, we conclude that the district court correctly found that Gaff failed to allege sufficient personal injury to sustain his direct cause of action under Sec. 93. Gaff primarily claims that his shares in the failed bank became totally worthless as a result of the defendants' conduct. Gaff therefore is claiming injury based on a decrease, albeit to zero, in the value of his stock. As we just stated, a diminution in the value of stock is merely indirect harm to a shareholder and does not bestow upon a shareholder the standing to bring a direct cause of action under Sec. 93.
 
 
 30
 Gaff also claims that he suffered personal injury in that he was deprived of preemptive rights as a result of a "sale leaseback/voting trust transaction." Gaff alleged that the management group which controlled the bank sought to ensure incumbency in office by having the bank offer a stock issuance of over 30,000 corporate shares at an inflated price, and by having a voting trust, controlled by the group, purchase the entire offering. Gaff contended that since the shares were offered at a price greater than fair market value, he was effectively prevented from exercising his preemptive right of purchasing the newly-issued shares. Gaff also claimed that, in completing the stock offering, the members of the management group violated certain provisions of the federal banking laws. As relief for the alleged violation of his preemptive rights, Gaff sought a declaratory judgment that the sale of the shares to the voting trust constituted a violation of preemptive rights, and an award of damages in an amount appropriate to sanction the defendants' conduct.
 
 
 31
 These claims by Gaff also fail to provide Gaff with the standing necessary to pursue his federal banking claims under Sec. 93. First, any alleged violation of his preemptive rights is now immaterial since the bank is now defunct. As Gaff acknowledged in his briefs before this court, any equitable relief arising from the purported violation of his preemptive rights has been mooted by the bank's failure. Furthermore, Gaff is essentially claiming that he was personally injured because he was discouraged, but not prevented, from purchasing worthless stock at an inflated price. We fail to see how any direct injury inured to Gaff as a result of his failure to purchase any of the newly-issued shares.
 
 III.
 
 32
 The district court also dismissed Gaff's claims brought under the federal securities laws on the ground that Gaff had not alleged sufficient personal injury. The court ruled correctly in doing so for two reasons. First, the general principles adopted in Warren apply with equal force to claims of violations of the federal securities laws. Thus, in order to maintain a direct cause of action under the federal securities laws, a plaintiff shareholder must allege direct, personal injury; mere diminution in the value of corporate stock will not suffice. Since Gaff has not asserted any damages resulting from the alleged securities law violations aside from a decrease in stock value, he has not presented a cognizable federal claim.
 
 
 33
 Second, it is well-accepted that in order to assert a claim for damages based on a violation of the federal securities laws, the plaintiff must be either a purchaser or seller of securities in connection with the securities claims. Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 749, 95 S.Ct. 1917, 1931, 44 L.Ed.2d 539 (1975); Gutter v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 644 F.2d 1194, 1196 (6th Cir.1981), cert. denied, 455 U.S. 909, 102 S.Ct. 1256, 71 L.Ed.2d 447 (1982); Simmons v. Wolfson, 428 F.2d 455, 456 (6th Cir.1970), cert. denied, 400 U.S. 999, 91 S.Ct. 459, 27 L.Ed.2d 450 (1971). A review of the complaint shows that Gaff has not alleged that he was either a purchaser or seller of NBT stock during the pertinent period of the complaint. Therefore, Gaff has no standing to assert his federal securities law claims.
 
 
 34
 Gaff contends, however, that he at least has standing to pursue a claim under 15 U.S.C. Sec. 77q(a), which makes it "unlawful for any person in the offer or sale of any securities" to engage in unlawful conduct. Since this provision refers to an "offer" of securities, Gaff interprets the provision as permitting a direct action by a person who was merely an offeree, as opposed to a purchaser or seller, of stock. Gaff argues that he was an offeree with regard to two stock offerings made by the bank, and therefore has standing to bring a claim under Sec. 77q(a). Gaff is mistaken, since he misinterprets the effect of Sec. 77q(a). This court has succinctly stated that it "is clear that only purchasers have standing under Section[ ] ... 17(a) of the 1933 Act," which is 15 U.S.C. Sec. 77q(a). Gutter, 644 F.2d at 1196. Thus, while Sec. 77q(a) makes liable any person who engages in fraudulent conduct in relation to a stock offering, the only persons who have standing to impose liability on and recover damages for such conduct are purchasers who acted in reliance on the fraudulent offering. Gaff clearly is not such a purchaser. Therefore, we affirm the district court's dismissal of Gaff's securities claims.
 
 IV.
 
 35
 The remaining issue before this court concerns the disposition of the state common law claims which Gaff asserted in amended Count V. Although the district court did not specifically address those claims in its order, its dismissal of Count V was made pursuant to Fed.R.Civ.P. 12(b)(6) and therefore effected a dismissal of the state claims with prejudice.
 
 
 36
 In order to have dismissed the claims with prejudice, the district court had to have exercised pendent jurisdiction over the claims. "The three prerequisites for the existence of pendent jurisdiction are (1) the federal claim must have substance sufficient to confer subject matter jurisdiction on the court; (2) the state and federal claims must derive from a common nucleus of operative fact; and (3) the plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding." Transcontinental Leasing, Inc. v. Michigan Nat'l Bank, 738 F.2d 163, 165-66 (6th Cir.1984). Since the first prerequisite is not met here, the district court should not have exercised pendent jurisdiction. It is generally recognized that where, as in this case, federal issues are dismissed before trial, district courts should decline to exercise pendent jurisdiction over state law claims. United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Nash & Assocs., Inc. v. Lum's of Ohio, Inc., 484 F.2d 392, 396 (6th Cir.1973); Burt v. Blue Shield, 591 F.Supp. 755, 759 (S.D.Ohio 1984) (citing Gibbs ). In fact, the Second Circuit has gone so far as to state that "the retention of jurisdiction for trial of a pendent state law claim on the basis of a federal question claim already disposed of by a Rule 12(b)(6) motion would be an abuse of discretion absent unusual circumstances." Nolan v. Meyer, 520 F.2d 1276, 1280 (2d Cir.), cert. denied, 423 U.S. 1034, 96 S.Ct. 567, 46 L.Ed.2d 408 (1975). While we find it unnecessary to adopt this rule of operation at this time, we nevertheless conclude that there is insufficient reason in the instant case to depart from the general rule disfavoring the exercise of pendent jurisdiction under these circumstances. Accordingly, we conclude that it was error for the district court to have retained jurisdiction over the purported state law claims for the purpose of dismissing them with prejudice. The district court instead should have remanded the pendent state claims to the state court from which they were originally removed.
 
 
 37
 For the reasons set forth above, the judgment of the district court is AFFIRMED in part, REVERSED in part, and REMANDED for the purpose of remanding the state claims to state court.
 
 
 
 [1]
 It appears that from this point on, only Gaff pursued this action. Dalrymple, who was named as a defendant in the FDIC's amended complaint, stopped making appearances before the district court with respect to the amended Count V. Nevertheless, when the district court dismissed that count, it expressly made the dismissal binding on Dalrymple. Dalrymple has not appealed from the dismissal
 
 
 [2]
 The standing provision of the Federal Reserve Act, 12 U.S.C. Sec. 503, contains essentially identical language; our ensuing analysis therefore applies equally to the standing issues under both Sec. 93 and Sec. 503
 
 
 [3]
 By using the term "violate any of the provisions of this chapter," Sec. 93 is referring to chapter 2 of Title 12. Marx v. Centran Corp., 747 F.2d 1536, 1540 (6th Cir.1984), cert. denied, 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985)