462

Terry J. McKANE, Plaintiff,

v.

CITY OF LANSING, the Board of Trustees of the City of Lansing Employees Retirement System, and David C. Hollister, Douglas Rubley, Tony Benavides, Sharon Bommarito, John Brodie, Rita Pontz, and Ronald Kruger, in their individual and official capacities, jointly and severally, Defendants.

and

CITY OF LANSING, the Board of Trustees of the City of Lansing Employees Retirement System, and David C. Hollister, in his official capacity as Mayor of the City of Lansing, jointly and severally, Counter–Plaintiffs,

v.

Terry J. McKANE, Counter–Defendant.

No. 5:94–CV–48.

United States District Court, W.D. Michigan, Southern Division.

Aug. 20, 1996.

Thomas A. Baird, White, Przybylowicz, Schneider & Baird, PC, Okemos, MI, for Terry J. McKane.

James D. Smiertka, Lansing City Attorney's Office, Department of Law, Lansing, MI, for City of Lansing, Board of Trustees of the City of Lansing Employees Retirement System, David C. Hollister, Douglas Rubley, Tony Benavides, Sharon Bommarito, John Brodie, Rita Pontz, Ronald Kruger,

## OPINION

QUIST, District Judge.

Plaintiff Terry J. McKane, a former mayor of the City of Lansing, brought this action against the City of Lansing, its Retirement Board and the individual members of the Board. Plaintiff alleges that his enhanced benefits under an Early Retirement Program were improperly terminated. This matter is before the Court on cross motions for summary judgment and/or to dismiss. On July

23, 1996, this Court heard oral arguments on the pending motions. At the hearing, counsel for both parties agreed that there are no material facts in dispute.

## Introduction

In 1971, plaintiff was elected to the Lansing City Council and served as a council member for nearly eleven years. In November of 1981, plaintiff was elected mayor of the City of Lansing ("City"). He assumed the duties of office on January 1, 1982.[1] Plaintiff retired pursuant to an Early Retirement Program one year before his third term of office was set to expire. The Early Retirement Program afforded enhanced benefits and was approved by the City Council during plaintiff's term as mayor.

After plaintiff retired, the City elected a new mayor, David Hollister. During Mayor Hollister's term, the resolution which created the Early Retirement Program was found to be invalid as applied to elected officials. The City notified plaintiff that his enhanced retirement benefits attributable to the Early Retirement Program would be terminated. Plaintiff was not afforded a hearing prior to the Retirement Board's decision to reduce the benefits, although he was offered a subsequent opportunity to challenge the decision.

Plaintiff filed this lawsuit alleging that the termination of his Early Retirement Benefits was improper. His complaint contains five counts:

Count I: Deprivation of Property without due process of law pursuant to 42 U.S.C. § 1983

Count II: Deprivation of Property without due process of law pursuant to state constitutional law

Count III: Breach of Contract

Count IV: Diminishment of Retirement Benefits in violation of Art. IX, § 24 of Michigan Constitution

Count V: Promissory Estoppel

Defendants filed 26 affirmative defenses and a counterclaim containing seven counts.[2]

This action was consolidated for discovery with a similar case *Lansing v. Blair,* Case No. 1:94–CV–270, 43 N.Y. 48. Mr. Blair is a former Lansing City Clerk whose Early Retirement Benefits were also terminated.

## Facts

Plaintiff contends that in the years leading up to the adoption of the Early Retirement Program, expenditures for the City were significantly out-stripping revenues and that the City was facing impending financial difficulty. Defendants dispute the accuracy of this financial forecast and submit that the City actually experienced a surplus of general fund monies. Nevertheless, it appears from the record that there was concern about the fiscal health of the City. Plaintiff appointed a Blue Ribbon Committee comprised of respected community members to provide financial advice to the City. In its report dated March 1992, the Blue Ribbon Committee concluded:

> With revenues of $75 million annually, the City of Lansing has funds to meet many of the City's needs. However, financial projections of slower General Fund Revenue growth will not provide for meeting expenses that are projected to rise at a higher rate and level in years to come. Payroll, benefits and General Fund subsidies to City supported facilities, enterprises and public services should be reviewed and prioritized in the context of affordability.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> Based on its projected revenue growth, the City will find wage and benefit costs asso-

---

1. Plaintiff was originally elected to a four-year term. He was re-elected to two additional terms.

2. Count I of the counterclaim alleges that Resolution 201 which implemented the Early Retirement Program is void; Count II alleges a violation of the Open Meetings Act; Count III alleges a violation of Michigan law governing contracts with public servants M.C.L. § 15.321 *et seq.;* Count IV alleges gross negligence, breach of fi-

duciary duty, unjust enrichment and violation of public trust; Count V alleges that early retirement benefits for plaintiff could only be authorized by the Lansing Elected Officials Compensation Commission; Count VI alleges violation of Article XI, § 3 of the Michigan Constitution; and Count VII alleges violation of public policy with respect to giving inducements to elected officials to leave office.

ciated with human capital increasingly difficult to afford. Consequently a comprehensive strategy must be formulated to control these costs.

(City of Lansing Blue Ribbon Committee Report at 21.)

At plaintiff's request, Finance Director, Stephen Duarte, developed an Early Retirement Program and presented it to the City Council Committee of the Whole at a meeting held on March 28, 1992. The Committee went into executive session to discuss the presentation. The proposed plan granted an additional five years of credited service to be used in calculating monthly pension benefits. The plan also increased the monthly benefit multiplier from 2.5% to 2.75%. At a subsequent closed session meeting held on April 9, 1992, a list of employees eligible to retire under the plan was distributed. Plaintiff's name appeared on the list.

On April 13, 1992, the City Council met and adopted Resolution No. 201 which purportedly implemented the Early Retirement Program. The Resolution extended Early Retirement Benefits to "Executive and all other non-unionized ... civilian personnel." Defendants note that the Resolution did not refer to "elected officials" as persons eligible to participate in the Early Retirement Program.

On November 23, 1992, plaintiff submitted his application for participation in the Early Retirement Program. Plaintiff's application for Early Retirement Benefits was unanimously approved by the Retirement Board on December 17, 1992. Plaintiff, a member of the Retirement Board, chose not to abstain from the vote approving his application for Early Retirement Benefits. Defendants assert that at the meeting, plaintiff was advised by the Chief Assistant City Attorney

that only an ordinance could legally obligate the City to pay Early Retirement Program Benefits. The minutes of the December 17, 1992, meeting reflect that plaintiff supported a motion to approve an ordinance establishing the Early Retirement Program. The Board approved:

Draft # 2 an ordinance to amend Chapter 292 of the codified Ordinances of the City of Lansing by adding a new section 292.32 to authorize the Board of Trustees to implement early retirement benefits.

Defendants note that during plaintiff's term, the City Council never adopted an ordinance implementing the Early Retirement Program.

Plaintiff's retirement pursuant to Early Retirement Program prompted lawsuits against the City and the Early Retirement Plan by a citizens group and the United Auto Workers ("UAW") Local representing City employees. *See Vaughan v. Lansing*, Ingham County Circuit Court, File No. 92–73552–CZ and *UAW AFL–CIO v. Lansing*, Ingham County Circuit Court File No. 92–73590–CZ.[3] The City retained outside counsel to defend itself against the lawsuits. The actions were consolidated and ultimately dismissed based upon the lack of standing and laches.[4]

On December 29, 1992, plaintiff effectively retired from his position as Mayor and began receiving Early Retirement Benefits. Mayor Crawford completed the remainder of plaintiff's term of office. Mr. Hollister won the general election in November of 1993, and took office on January 1, 1994. Mayor Hollister hired a new City Attorney, James Smiertka, and requested the City Attorney's office draft an opinion regarding the legality of the Early Retirement Program adopted by

3. The plaintiffs in those cases argued:
a) The Early Retirement Program was null and void except as to unionized employees because it was adopted by resolution rather than ordinance;
b) The Early Retirement Benefits constituted retroactive compensation to public officials for services previously rendered, in violation of Article XI, § 3 of the Michigan Constitution and;
c) The adoption of the Early Retirement Program constituted a conflict of interest for

plaintiff, Council members Schmidt, Belen, and Benavides, and City Administrators Duarte and Lazar in violation of M.C.L. § 15.321, *et seq.*

4. Plaintiff notes that in those lawsuits, the City took the position that the Early Retirement Program was lawfully adopted by resolution and that the individuals who retired under the plan, including elected officials, were entitled to enhanced benefits.

the City pursuant to Resolution No. 201. In a formal legal opinion dated January 28, 1994, the new City Attorney advised that the Early Retirement Program did not apply to elected officials and was void.

> It is our conclusion that the Early Retirement Plan was improperly adopted and is a nullity and void and the two elected officials are not entitled to its benefits. It is our further opinion and conclusion that the City is not liable for the increased benefits to the two elected officials either under Resolution 201 or by virtue of contract.
>
> However, the City is liable for the increased benefits to the Union and Non–Union Personnel mentioned in this opinion who elected to take the Early Retirement Plan. Nevertheless, an Ordinance should be presented and adopted to ratify Resolution 201 as to those individuals because of Charter requirements.

(January 28, 1994, Attorney Opinion at 16.)

In a January 28, 1994, letter, Mayor Hollister informed plaintiff of the City Attorney's opinion. The letter also stated that Mayor Hollister had directed the Interim Finance Director to immediately adjust plaintiff's retirement benefits to exclude the benefits attributable to the Early Retirement Program. Plaintiff's annual retirement benefits under the Early Retirement Program were $48,865.96. His annual retirement benefits exclusive of the enhanced Early Retirement Program are $36,120.13.

At a special meeting held on February 1, 1994, the Retirement Board voted unanimously to ratify the decision reducing plaintiff's retirement benefits. Plaintiff asserts he was not offered a hearing prior to the vote and that the Retirement Board had no procedures for appealing its decisions.[5]

On April 17, 1995, the City passed an ordinance which amended its existing retirement ordinance. The newly-enacted ordinance specifically excludes elected officials from participating in the Early Retirement Program.[6]

### The Parties' Positions

Plaintiff claims he was deprived of constitutionally guaranteed procedural due process rights when defendants terminated his Early Retirement Benefits without a pre-termination hearing. Defendants claim that plaintiff did not have a legitimate claim of entitlement to enhanced retirement benefits because the legislation which purportedly created the Early Retirement Program was enacted by resolution rather than by ordinance.

### Discussion

■ The due process clause of the Fourteenth Amendment protects individuals against the deprivation of life, liberty, or property without due process of law. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, n. 3, 105 S.Ct. 1487, 1491, n. 3, 84 L.Ed.2d 494 (1985). Property rights "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He

---

**5.** Plaintiff was offered a hearing regarding the reduction of benefits on March 17, 1994.

**6.** The legality of the Early Retirement Program, including its inclusion of elected officials, was investigated by several agencies. The Lansing Board of Ethics spent ten months conducting an investigation. It issued an opinion on September 30, 1993. The majority of the Board made these findings:

(1) The Early Retirement Program should have been passed by ordinance and not by resolution.

(2) Elected officials cannot be offered a financial inducement to vacate a position to which they have been elected for a fixed term.

(3) Officers of the City who participate in making a governmental decision to offer a financial inducement to themselves to terminate their office and do not disclose their interest to the public are in violation of the City charter and ethical provisions.

(September 30, 1993, City of Lansing Board of Ethics Advisory Opinion at 1.)

The Board of Ethics also conducted an investigation into plaintiff's conduct and found probable cause to believe that plaintiff violated Section 290.03(a) of Lansing's Codified Ordinances.

must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.*

■ Plaintiff's claim—that denial of a hearing prior to the reduction of his retirement benefits deprives him of procedural due process—is premised on the assertion that he has a constitutionally cognizable right to enhanced benefits. This Court finds that premise to be erroneous and rejects plaintiff's due process claim. Plaintiff did not have a property interest which is subject to due process protection because the resolution creating the Early Retirement Benefits was not passed in a manner consistent with state law. Plaintiff cannot have a constitutionally protected right in benefits to which he is not entitled.

The legislation which purportedly created the Early Retirement Program was invalid and void *ab initio* because it was enacted by resolution rather than by ordinance. An ordinance requires publication and notice in contrast to a resolution, which does not require these procedures.[7] Resolutions differ from ordinances in that resolutions are designed to implement "ministerial functions of government for short-term purposes." *Parr v. Fulton,* 9 Mich.App. 719, 722, 158 N.W.2d 35 (1968). Ordinances, by contrast, are designed "for establishing more permanent influences on the community itself." *Id.* Clearly, enactment of a revised retirement program is not a "ministerial" function of government with "short-term" consequences. Implementation of such a program can obligate the City to pay out increased retirement benefits for decades.

■ The Lansing Charter states that amendments to previously adopted ordinances must be made by a subsequent ordinance:

In addition to other acts required by law or by specific provision of this Charter to be done by ordinance, those acts of the City shall be by ordinance which:

\*      \*      \*      \*      \*      \*

(c) amend or repeal any ordinance previously adopted. Lansing Charter, Art. 3, § 3–301. Ordinance 132, adopted May 19, 1941, established a retirement system for City employees. The City Council attempted to amend the provisions of Ordinance 132 by passing Resolution No. 201. However, under Michigan law an ordinance cannot be "amended" by resolution. The Michigan Supreme Court has held that where an ordinance is required, a resolution is not a valid substitute.

It follows that where the substance of City action requires the adoption of an ordinance, a resolution cannot operate as a *de facto* ordinance. The attempt to legislate by resolution is simply a nullity.

*Rollingwood Homeowner's Corp. v. Flint,* 386 Mich. 258, 267, 191 N.W.2d 325 (1971); also, *McCarthy v. Marcellus,* 32 Mich.App. 679, 189 N.W.2d 80 (1971).

Plaintiff argues that implementation of the Early Retirement Program prior to enactment of an ordinance was consistent with prior practice. "Ordinances were commonly prepared after the implementing resolution was passed and implementation had taken place." (Plaintiff's brief at 16.) This Court is unwilling to accept plaintiff's contention that the City Council's prior practice, which was admittedly inconsistent with the City Charter, constituted an effective method of amending the ordinance. To adopt plaintiff's argument would encourage public officials to deliberately disregard municipal charters. The City Charter's requirement that amendments to existing ordinances be undertaken by passage of an ordinance protects the public by providing notice of the proposed ordinance's provisions. Although it may be possible to alter or construe collective bargaining agreements by prior practice between private parties, public entitlements cannot be created by a City Council's prior practice which fails to conform to the City Charter.

Plaintiff also maintains that he is "tiebarred" to Early Retirement Benefits offered to union employees pursuant to the City's

---

7. This distinction was made by defendants' counsel during oral argument and was not disputed by plaintiff.

Personnel Rules. According to plaintiff, the tie-bar provision automatically extended the benefits negotiated on behalf of the Union to the City's executive, exempt, and elected officials. The tie-bar provision, however, specifically excepts elected officials from those personnel rules. The personnel rules state: "All elected officials in the City of Lansing ... are exempt from the personnel rules of the City."

This Court agrees with plaintiff that a person's means of livelihood is one of the most significant property interests an individual can possess. *See Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1348 (6th Cir. 1992). However, plaintiff's reliance upon *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), is misplaced. The issue in *Loudermill* was not the issue before this Court and the facts of *Loudermill* are distinguishable. Loudermill, a public employee (security guard), was terminated because of allegedly false statements on his employment application. He did not receive any hearing prior to his termination. The Supreme Court acknowledged that Loudermill possessed a property right in continued public employment. 470 U.S. at 539, 105 S.Ct. at 1491. The Court held that before Loudermill could be deprived of this property right, notice and an opportunity to present his side of the story were needed in order to comply with the requirements of due process. 470 U.S. at 546, 105 S.Ct. at 1495. Plaintiff's brief relies upon footnote 5 of the Supreme Court's opinion which states in part:

> The Cleveland Board of Education now asserts that Loudermill had no property right under state law because he obtained his employment by lying on the application. It argues that had Loudermill answered truthfully he would not have been hired. He therefore lacked a "legitimate claim of entitlement" to the position....
>
> For several reasons, we must reject this submission ... [T]he argument relies on a retrospective fiction inconsistent with the undisputed fact that Loudermill was hired and did hold the security guard job. The Board cannot escape its constitutional obligations by rephrasing the basis for termi-

nation as a reason why Loudermill should not have been hired in the first place. *Id.*, 470 U.S. at 539, n. 5, 105 S.Ct. at 1491, n. 5.

Loudermill was entitled to a hearing only because he had a valid property right. The instant case does not involve the deprivation of a protected property right because of alleged wrongdoing. The instant case does not involve any retrospective fiction. Rather, in the instant case there is no property right to which procedural due process protections can attach in the first instance. The difference is: Loudermill had a property right to validly created and existing public employment; McKane did not and does not have a property right to invalid enhancements of his pension benefit.

Given that this Court has concluded that plaintiff did not possess a protected property interest in enhanced retirement benefits, plaintiff could not have been deprived of his property without due process. This Court will grant, in part, defendants' motion for summary judgment. Count I of plaintiff's complaint will be dismissed.

### State Claims

■ Generally, where federal issues are dismissed prior to trial, "district courts should decline to exercise jurisdiction over state law claims." *Gaff v. FDIC*, 814 F.2d 311, 319 (6th Cir.1987) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Recently, the United States Court of Appeals for the Sixth Circuit discussed, in considerable detail, when a district court should follow the "general rule." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244 (6th Cir. 1996). In essence, the Sixth Circuit stated that the decision to retain or dismiss "depends on 'judicial economy, convenience, fairness, and comity.'" *Id.* at 1254. As the Sixth Circuit pointed out, 28 U.S.C. § 1367(c)(3) provides that a district court "'may' (rather than must) decline to exercise jurisdiction if 'the district court has dismissed all claims over which it had original jurisdiction.'" *Id.*

As a rule of thumb, however, the *Gibbs* dictum remains valid. When all federal

claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed. This court has consistently applied *Gibbs*'s amended dictum. *Taylor v. First of America Bank–Wayne*, 973 F.2d 1284, 1287 (6th Cir.1992) ("when 'all federal claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction....' "); *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412 (6th Cir.1991) (only "overwhelming interests in judicial economy may allow a district court to properly exercise its discretion and decide a pendent state claim even if the federal claim has been dismissed before trial."); *Gaff v. Federal Deposit Ins. Corp.*, 814 F.2d 311, 319 (6th Cir.1987) ("It is generally recognized that where, as in this case, federal issues are dismissed before trial, district courts should decline to exercise pendent jurisdiction over state law claims.").

*Id.* (several citations omitted). The Sixth Circuit then discussed several situations which, on balance, lead a district court to exercise its discretion to either retain jurisdiction or to dismiss the state law claims.

In this particular case, nothing has been pled, nor has anything occurred, which would cause this federal court to depart from the general rule in favor of dismissing the state claims. The only possible ground which would support retaining the state law claims would be the potential for additional delay in the final resolution of all issues between the parties.[8] Any such delay, however, will not be great. The parties can submit the state law issues to a state court with minimal rewriting of their briefs. Furthermore, there is no prejudice to either party arising from relegating the state claims to state court. (*See Id.* at 1255), and comity between federal and state courts leads to the conclusion that the state law issues should be resolved in the state courts. Therefore, because this Court has granted summary judgment with respect to plaintiff's only federal law claim, this Court will dis-

miss the state law claims without prejudice. 28 U.S.C. § 1367(c)(3).

An Order consistent with this Opinion will be entered.

### ORDER

In accordance with the Opinion entered this date,

**IT IS HEREBY ORDERED** that plaintiff's motion to dismiss and for summary judgment (docket no. 86) is **DENIED.**

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment and/or to dismiss (docket no. 85) is **GRANTED** in part. Count I of plaintiff's complaint alleging a due process violation is dismissed with prejudice.

**IT IS FURTHER ORDERED** that all state law claims are dismissed without prejudice. 28 U.S.C. § 1367(c)(3).

This case is dismissed in its entirety.

---

**8.** This case was stayed from June 12, 1995, to December 19, 1995, so that investigations could be conducted without jeopardizing anyone's Fifth Amendment rights.