**NOT RECOMMENDED FOR PUBLICATION**
File Name: 18a0449n.06

Nos. 17-5992/17-5998

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

KEVIN THOMPSON, on behalf of himself and all
others similarly situated,

        Plaintiff-Appellant,

v.

LOVE'S TRAVEL STOPS & COUNTRY STORES,
INC.,

        Defendant-Appellee.

———————————————————————

NOLAN C. DARBY; LAURIE ANDERSON;
CHASE MOSELY; DORENE IVY,

        Plaintiffs-Appellants,

v.

PILOT CORPORATION; PILOT TRAVEL
CENTERS, LLC, doing business as Pilot Flying J,

        Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Aug 29, 2018
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF TENNESSEE

OPINION

Before: GIBBONS, BUSH, and LARSEN, Circuit Judges.

**JOHN K. BUSH, Circuit Judge.** Time was, just about anywhere you drove, you could

pump your gas first (or even have it pumped for you) and then pay for it afterwards. Time was,

gas cost less than a buck a gallon.

Times changed. Nowadays, to stave off fuel theft, pay-at-the-pump devices commonly ask

customers either to prepay inside or to insert a payment card before pumping, allowing the gas

station to validate the card and to obtain preauthorization from the card issuer to charge the customer for the forthcoming transaction. When a pay-at-the-pump customer uses a credit card, this preauthorization process holds a fixed amount of available credit before the pump dispenses any fuel. The hold is released at some time after the transaction is completed, when the actual amount of the transaction posts as a settled charge to the customer's account.

Plaintiffs in this pair of putative class-action lawsuits allege that Defendants (operators of convenience stores and gas stations) preauthorize too much (up to $125 per transaction for passenger vehicles) for too long (several days) and without adequate notice. But Plaintiffs have alleged only the abstract injury of the loss of their available credit pending release of the preauthorization holds. No Plaintiff has alleged any concrete injury arising from that temporary loss of available credit. Plaintiffs therefore lack standing to assert their claims, so we affirm the district court's order dismissing their actions. Because this dismissal is for want of jurisdiction, however, we remand for the district court to enter its order without rather than with prejudice.

**I**

The proposed class representatives are citizens of various states who allege that they made purchases from Defendants in amounts ranging from $14.75 to $47.99 but were subjected to preauthorization holds of up to $125 on their credit-card accounts.[1] Plaintiffs assert claims for breach of implied-in-fact contract, unjust enrichment, fraudulent concealment, and violations of various state statutes. "We review de novo the district court's dismissal for lack of standing, we accept as true all the material allegations in the Plaintiffs' complaints, and we construe Plaintiffs'

---

[1] Plaintiffs assert that "a debit card is the functional equivalent of a credit card," Thompson's Br. 14 (citation omitted), and that Defendants have violated a Tennessee statute requiring disclosure of certain preauthorization holds for debit-card transactions, Tenn. Code Ann. § 47-18-128. Debit cards *are not* credit cards, however, and the named Plaintiffs who purchased fuel in Tennessee (Anderson, Mosely, and Thompson) all pleaded in Plaintiffs' complaints that they used a credit card and not a debit card for their purchases. Because the Tennessee statute in question does not even arguably apply to any of these Plaintiffs' transactions, we decline to consider further whether Plaintiffs have pleaded a cognizable injury arising from Defendants' alleged violation of that statute.

complaints in Plaintiffs' favor." *Crawford v. U.S. Dep't of Treasury*, 868 F.3d 438, 457 (6th Cir. 2017); *see also Jenkins v. McKeithen*, 395 U.S. 411, 421–22 (1969).

## II

Federal courts have constitutional authority to decide only "cases" and "controversies." U.S. Const. Art. III § 2; *Muskrat v. United States*, 219 U.S. 346, 357 (1911). The requirement of standing is "rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To bring suit, Plaintiffs must have "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues" before the court. *Baker v. Carr*, 369 U.S. 186, 204 (1962).

Each Plaintiff has the burden "clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *Warth v. Seldin*, 422 U.S. 490, 518 (1975). "Standing cannot be 'inferred argumentatively from averments in the pleadings,'" *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (quoting *Grace v. Am. Cent. Ins. Co.*, 109 U.S. 278, 284 (1883)), "but rather 'must affirmatively appear in the record.'" *Id.* at 232 (quoting *Mansfield C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 392 (1884)). The Supreme Court has "always insisted on strict compliance with this jurisdictional standing requirement," *Raines v. Byrd*, 521 U.S. 811, 819 (1997), and so must we.

## A

At a minimum, Article III standing requires that for each claim, each plaintiff must assert an actual or imminent injury that is traceable to the defendant and redressable by the court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–62 (1992); *Crawford*, 868 F.3d at 452. The injury must be an "injury in fact," meaning "an invasion of a legally protected interest which is (a) concrete and

particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted).

The requirement that an injury be "concrete and particularized" has two discrete parts: concreteness, which is the requirement that the injury be "real," and not "abstract," *Spokeo*, 136 S. Ct. at 1548, and particularization, which is the requirement that the plaintiff "*personally* [have] suffered some actual or threatened injury." *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982) (emphasis added) (quoting *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 99 (1979). The hurdle that Plaintiffs fail to clear is concreteness. "Abstract, intellectual problems," *FEC v. Akins*, 524 U.S. 11, 20 (1998), and "abstract concern," *Diamond v. Charles*, 476 U.S. 54, 67 (1986), are not concrete injuries. An injury doesn't have to be tangible to be concrete, of course, but "it must actually exist." *Spokeo*, 136 S. Ct. at 1548.

## B

As the district court aptly recognized, Plaintiffs' allegations in their complaints are conclusory, and, to the extent that they purport to state a concrete injury, circular. For example:

- "The excessive holds, in effect, resulted in losses of credit, depriving Plaintiff and Class members of access to their otherwise available credit funds for several days. They proximately caused Plaintiff . . . to suffer demonstrable, ascertainable, and measurable damages, *i.e.*, not merely losses of credit, but tangible, pecuniary, and actual harm, as their available credit disappeared for several days. These damages reflect the opportunity cost of the credit card holds placed in excess of the actual purchases made. That is, the difference between the amount of the credit card hold placed and the actual purchase *represents spending power denied to Plaintiff and proposed Class members by Love's*." Thompson's Amended Compl. ¶ 6.

- "Plaintiffs . . . allege much more than a temporary diminution in their available credit. They have suffered a demonstrable loss of credit, which was proximately caused by Pilot. This loss of credit resulted in actual harm. Thus, they suffered concrete and tangible injuries and real-world harm as a result of Pilot's acts and omissions." Darby's Amended Compl. ¶ 71.

The language of Plaintiffs' complaints clearly reflects Plaintiffs' recognition of the Article III standing requirement. But equally clear is Plaintiffs' failure to plead *facts* that would satisfy that requirement. Nevertheless, on appeal, Plaintiffs have doubled down on their assertions that their conclusory claims in their complaints suffice to show standing:

- "The District Court either mis-comprehended [sic] Plaintiff's standing allegations or it was simply wrong in its analysis. The alleged temporary loss of credit and spending power was not 'merely a description of the effect of lost credit.' Rather, the temporary seizure of Plaintiff's credit and diminishment of his spending power was an invasion of Plaintiff's credit, a legally-protected interest. This is all that is required. *Spokeo*, 136 S. Ct. at 1548. What is more, the harm alleged was not something Plaintiff feared might happen or which put him at risk. To the contrary, this loss of credit and spending power happened and existed. Thus, it was real, not conjectural or hypothetical." Thompson's Br. 23–24.

- "If granted leave to amend, Plaintiffs would augment their complaint with a host of additional facts to more fully allege the requirements of Article III standing. For example, *although they did not believe it necessary to do so*, in view of the District Court's rulings, Plaintiffs could have amended their complaint to allege emotional distress or by adding one or more additional Plaintiffs who had actually attempted to make purchases during the 'hold' period but had their credit cards declined because of the holds." Darby's Br. 34 (emphasis added).

Nowhere in Plaintiffs' pleadings or briefs do Plaintiffs articulate what is "real" about the harm arising from Defendants' temporary preauthorization holds. Indeed, Plaintiffs state in their amended complaints that "Plaintiff has not specifically alleged that [Defendant's] grossly excessive credit holds have deprived him and other Class members of basic needs, insufficient funds to cover expenses, or overdraft charges, but it is likely – and even probable – that the loss of credit occasioned by such holds has indeed resulted in such deprivations for other unnamed Class members." Thompson's Amended Compl. ¶ 39. Whether it is "likely" (or "probable," same difference) that some unnamed person has suffered a concrete injury on account of Defendants' preauthorization practice is irrelevant to our inquiry, for "[a] potential class representative must demonstrate individual standing." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir.

1998).  This individual standing "must affirmatively appear in the record."  *FW/PBS*, 493 U.S. at 232 (citation omitted).  And here it does not.[2]

Plaintiffs rely on a Tennessee Supreme Court decision that, Plaintiffs claim, "recognize[s] that state and federal courts alike implicitly recognize that loss of credit is an economic injury." Darby's Br. 24 n.12 (citing *Discover Bank v. Morgan*, 363 S.W.3d 479, 497 (Tenn. 2012)).  But *Morgan* does not even purport to address Article III standing.

Moreover, *Morgan* uses "loss of credit" to mean injury to one's credit rating, not temporary loss of available credit on a credit-card account.  *See Morgan*, 363 S.W.3d at 497–98.  And equally damaging to Plaintiffs' reliance on *Morgan* is that, even if Plaintiffs could show a "loss of credit" as contemplated in *Morgan*, "the loss of credit must have caused actual harm to the aggrieved party, such as lost profits or added costs."  *Id.* at 497.  Plaintiffs have pleaded no such harm. Plaintiffs essentially ask us to hold that any intrusion upon one's credit limit, no matter how temporary or factually harmless, is legally actionable.  But Plaintiffs provide neither relevant authorities nor persuasive principles to support their position, nor can we find any.  Whatever interest an individual has in his credit limit, it is not so legally protected that every occupation of available credit is *per se* a cognizable injury.

The district court was therefore correct to dismiss Plaintiffs' actions for want of standing. A pair of analogies supports this conclusion.  As in *Lujan*, for example, in which the Supreme Court held that environmental organizations' members had not suffered concrete harm from the endangering of wild animals in Sri Lanka when they did not even have plans to go see the animals in Sri Lanka and they thus lacked standing to challenge the Secretary of the Interior's interpretation

---

[2] We do not (and, indeed, may not) answer the theoretical question whether Plaintiffs would have had standing if they *had* alleged, for example, that a preauthorization hold precipitated a subsequent denial of another attempted charge, resulted in a fee, impaired a credit rating, or otherwise caused some injury beyond the temporary occupation of Plaintiffs' unused credit, which is the only harm alleged in Plaintiffs' complaints.

of the Endangered Species Act as it affected those animals, similarly, Plaintiffs here lack standing to challenge the temporary holds on their credit when they do not even allege any intent to use that credit had it been available. *See Lujan*, 504 U.S. at 560–62. This case is also analogous to *Crawford*, which we decided last year. There, plaintiffs (mostly Americans living abroad) complained, *inter alia*, that certain foreign-account tax-compliance laws caused them difficulties in their dealings with foreign banks. *See Crawford*, 868 F.3d at 443, 450–52. We held that the plaintiffs lacked standing, concluding as to some plaintiffs that though they may have alleged having foreign bank accounts to which the challenged laws could theoretically apply, they had not alleged any concrete injury such as the closure of an account or the actual or even impending imposition of a tax or penalty for noncompliance. *See id.* at 458–61. Likewise here: Plaintiffs may have alleged a practice by Defendants that could theoretically produce a concrete injury, but they have not alleged any arguably concrete injury such as the denial of an opportunity to use their credit, the rejection of an attempted charge, an impairment to a credit rating or credit report, or a fee.

In short, Plaintiffs lack standing to sue, so we affirm the dismissal of their actions.

### III

Without providing any reasoning as to why it did so, the district court dismissed Plaintiffs' actions with prejudice rather than without prejudice. A dismissal labeled "with prejudice" signals a final judgment on the merits with preclusive effect. *See Gooch v. Presbyterian Home Hosp.*, 239 F. 828, 830 (6th Cir. 1917) ("[T]he defendants moved the court to dismiss the action with prejudice, which no doubt means to dismiss it absolutely and on the merits."); *cf. Warfield v. AlliedSignal TBS Holdings, Inc.*, 267 F.3d 538, 542 (6th Cir. 2001) ("A voluntary dismissal with

prejudice operates as a final adjudication on the merits and has a res judicata effect." (citation omitted)).

But Article III standing is jurisdictional, and a federal court lacking subject-matter jurisdiction is powerless to render a judgment on the merits. *See Capron v. Van Noorden*, 6 U.S. (2 Cranch) 126, 127 (1804); *Gaff v. Fed. Deposit Ins. Corp.*, 814 F.2d 311, 319 (6th Cir. 1987) (holding that "[i]n order to have dismissed [supplemental state-law] claims with prejudice, the district court had to have exercised [subject-matter] jurisdiction over the claims"). Consistent with this, our court has stated on several occasions that dismissal for lack of subject matter jurisdiction should normally be without prejudice. *See, e.g.*, *Pratt v. Ventas, Inc.*, 365 F.3d 514, 522 (6th Cir. 2004) ("[A] dismissal for lack of subject matter jurisdiction does not operate as an adjudication on the merits for preclusive purposes." (quoting *Holloway v. Brush*, 220 F.3d 767, 778 (6th Cir. 2000))); *Revere v. Wilmington Fin.*, 406 F. App'x 936, 937 (6th Cir. 2011) ("Dismissal for lack of subject-matter jurisdiction should normally be without prejudice, since by definition the court lacks power to reach the merits of the case." (citing *Ernst v. Rising*, 427 F.3d 351, 366 (6th Cir. 2005))).

Defendants do not argue that any extraordinary circumstances exist in this case that would justify a dismissal with prejudice as an exception to the general rule that a dismissal for lack of standing is without prejudice. And Defendants' cited cases, which all concern dismissals for failure to state a claim, are inapposite because such dismissals *are* properly entered with prejudice. *See Pratt*, 365 F.3d at 522 ("A dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits, and is therefore done with prejudice." (internal quotation marks omitted)). We therefore conclude that it was improper for the district court to purport to order a dismissal with prejudice. *See Attias v. Carefirst, Inc.*, 865 F.3d 620, 624 (D.C.

Cir. 2017) ("Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (quoting *Steel Co.*, 523 U.S. at 94)).

**IV**

In sum, we **AFFIRM** the district court's dismissal of Plaintiffs' actions for want of standing, but we **REMAND** these actions for entry of orders dismissing them without prejudice.